J. W. PAYNE, Plaintiff in Error,

v.

KING'S VAN & STORAGE, INC., a corporation, Defendant in Error.

No. 39091.

Supreme Court of Oklahoma.

Nov. 28, 1961.

Claude E. Love, Oklahoma City, for plaintiff in error.

Monnet, Hayes, Bullis, Grubb & Thompson, Max Fagin, Oklahoma City, for defendant in error.

PER CURIAM.

Action by plaintiff against the defendant to recover insurance premiums charged to the plaintiff by the defendant under a lease contract covering a period of five years, 1953 to 1957, inclusive, to-wit:

Property damage and public liability insurance

| | |
|---|---|
| 1953 | $ 602.31 |
| 1954 | 439.26 |
| 1955 | 451.82 |
| 1956 | 628.67 |
| 1957 | 90.39 |
| Total | $2,212.45 |

Cargo insurance

| | |
|---|---|
| 1953 | $ 218.95 |
| 1954 | 157.11 |
| 1955 | 145.93 |
| 1956 | 153.05 |
| 1957 | 11.50 |
| Total | $ 686.54 |

There are two written motor vehicle lease agreements by the parties involved in this case. Each were renewable annually by their terms and were to continue from year to year unless terminated by either party. The first written lease existed from 1952 to 1955. The 1955 lease existed from 1955 to 1957. Only two provisions of this motor vehicle lease agreement here are in question. They are:

"Paragraph 1(c). That during the period or periods when the vehicle is operated by it, the Lessee agrees to provide public liability, property damage and cargo insurance, as required by the Interstate Commerce Commission and to hold itself out as solely responsible to shippers and to the public generally, and shall be so painted, lettered or otherwise suitably identified as leased to 'King's Van & Storage, Inc.'

\* \* \* \* \* \*

"Paragraph 3. That any and all further compensation paid one to the other or operating agreements shall be mutually agreed upon by the parties and embodied in a separate agreement which shall not modify or cancel the provisions of this lease."

The further facts are prior to 1952 plaintiff was a truck driver in the defendant's employ. Plaintiff felt that he could better himself by being an owner-operator rather than an employee, and in the early part of 1952, he became such. That is he owned his truck, leased it to the defendant, who owned the required ICC and other permits. Plaintiff drove the truck receiving as compensation rather than a straight salary or hourly wage, that which was agreed upon between plaintiff and defendant by an oral operating agreement. Under the written "Motor Vehicle Lease Agreement" between the parties, plaintiff leased his truck to the defendant in consideration of $1.00 and other good and valuable considerations. Defendant agreed to provide public liability, property damage and cargo insurance as required by the Interstate Commerce Commission, and to hold itself out as solely responsible to shippers and the public generally during the period or periods when the truck was operated by it. The agreement further provided that any and all further compensation paid one to the other as operating agreements should be mutually agreed upon by the parties and embodied in a separate agreement which should not modify or cancel the provisions of the lease agreement. By separate oral operating agreement, the parties agreed on the compensation to be paid the plaintiff which was a percentage of the revenue from his hauling and the plaintiff agreed to keep his equipment up and pay the cost of the operation of his equipment and other items of expense.

Plaintiff hauled as an owner-operator under defendant's permit from the early part of February, 1952, until about March 7, 1957, when his connections with the defendant as an owner-operator terminated. This action was filed on December 23, 1957.

Each month during the more than five years that plaintiff hauled as an owner-operator, defendant prepared and submitted to him a statement reflecting the results of his hauls for the previous month, which included credits due him for his part of the revenue produced by such and charges.

against him for moneys advanced and paid by the defendant in accordance with the terms of the oral operating agreement.

Plaintiff hauled both inter- and intra-state, and quite often made trips to New York, and by the terms of the oral operating agreement defendant agreed that it would do whatever it could to secure loads for the plaintiff on return trips in order that he would not return empty. Other companies or agents who made return loads available made charges for their services, and in his monthly statements submitted by the defendant, plaintiff was charged with these charges which included both booking commissions and charges under interline agreements, as well as pick-up charges made by other parties who picked up the load and brought it into a warehouse where it became available to the plaintiff for his return trips. Defendant secured personal liability and property damage insurance covering all of the trucks used in its operation, including its own as well as those owned by plaintiff and other owner-operators, and each month plaintiff was charged with his part of the insurance premiums which had been paid by the defendant, and which were attributable to the plaintiff's operations. Defendant obtained cargo insurance with a deductible clause and uninsured cargo losses paid by the defendant on cargo damaged or destroyed while being hauled by the plaintiff were charged to the plaintiff on his monthly statements as soon as those losses had been adjusted and paid. The basis of the charges made by defendant to plaintiff was the same throughout the period of over five years that plaintiff was an owner-operator. For purposes of illustration, the statement of plaintiff's operations for the month of January, 1953, was introduced in evidence (defendant's Exhibit "A"). It contains a recapitulation sheet to which are attached charge and credit vouchers explaining the various items listed on the sheet. By the credit vouchers plaintiff was credited with the amount due him for the hauls he had made, and by the charge vouchers he was charged with various items such as insurance, plaintiff's portion of damage claims, the cost of the 1953 Oklahoma license plate for plaintiff's truck which had been advanced by the defendant, the premium on the fire, theft and carrier collision insurance policy which the plaintiff understood he was supposed to carry on his own equipment the same as on his own automobile and which had been advanced by the defendant, and certain labor charges which were incurred by the plaintiff in the operation of his equipment when he would hire a man to perform certain labor and the defendant would advance for the plaintiff the cost of the labor.

On December 4, 1954, plaintiff executed and delivered to the defendant a release of any claims that he might have against the defendant, including any which he might have by virtue of the motor vehicle lease agreement and motor vehicle operating agreements and on the same date executed a hauler's agreement with the defendant. In general the hauler's agreement dated December 1, 1954, provided that the plaintiff would pay for or be charged by the defendant with the same items with which the plaintiff had been charged by the defendant during the approximately three year period that the parties had operated under the oral agreement.

At the conclusion of the evidence of the plaintiff the demurrer of the defendant to the evidence was sustained.

On appeal the plaintiff contends the trial court erred in sustaining a demurrer to plaintiff's evidence and that there is only one issue to be determined at this time. This issue concerns the mere construction of one word, used by the contracting parties, viz., "provide." That by the "Motor Vehicle Lease Agreement" defendant was required to buy and pay for public liability property damage and cargo insurance, in order "to provide" insurance under the terms of the contract. That it was, therefore, a violation of the contract to charge insurance premiums and cargo damage claims to the plaintiff and that if this Court does not conclude that the word "provide" in the Motor Vehicle Lease Agreement

means "to purchase insurance for" the plaintiff there is no further question to construe in this case.

The record reflects there are several other questions which were presented to and considered by the trial court in connection with defendant's demurrer to plaintiff's evidence, but in connection with the only point raised by plaintiff on this appeal, the trial court concluded that the defendant was required to provide the insurance required by the ICC, but the parties were free to agree as to, by whom and in what proportions the premiums therefore would be paid.

Plaintiff cites several cases not one of which deals with the question as to which party should pay premiums due on insurance. Generally speaking, those cases deal with the efforts of a party to recover damages by reason of the failure or neglect of the other to obtain an insurance policy as agreed after a loss which would have been covered by such insurance had occurred.

■ Plaintiff refers to the Federal Statute and ICC regulations requiring that a certificated carrier must at all times be the responsible party to shippers and the public generally. We agree that the defendant could not contract away nor delegate this responsibility so as to relieve itself from and shift the responsibility to another. We find nothing in the record from which it could even be inferred that the defendant ever did anything attempting to relieve itself of this responsibility. Defendant had the duty to see to it that its operations, as well as those of its owner-operators were covered by the insurance required by the ICC. Who was to pay the insurance premiums and in what proportion was purely a matter of agreement between the parties concerned.

■ When the parties agreed under the "Motor Vehicle Lease Agreement" that the defendant would provide the insurance, and

that any compensations to be paid to the plaintiff for his hauling would be the subject of another agreement between them, they had the right to agree as to what percentage of the revenue the plaintiff would receive and what part of the expenses attributable to his operations he would pay.

■ If, however, there is any doubt as to the meaning of the parties, it has been resolved by their own construction of and actions under the contracts. For over five years the plaintiff was charged with and paid each month that portion of the insurance premiums attributable to his operations and for over five years the plaintiff was charged with and paid uninsured cargo losses resulting from his operations. This course of conduct over this protracted period is a construction of the contracts by the parties themselves. In Joachim v. Board of Education of Walters, 207 Okl. 248, 249 P.2d 129, 130, this Court in the second paragraph of the syllabus stated:

"Where the meaning of the terms used in a written contract is not clear, but such terms have been construed and acted upon by the parties interested, such construction will be adopted, even though the language of the contract may be susceptible of another construction."

Affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

WELCH and DAVISON, JJ., concur in result.

The Court acknowledges the aid of Supernumerary Judge N. S. CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.