The **FEDERAL NATIONAL BANK AND TRUST COMPANY OF SHAWNEE**, Shawnee, OKLAHOMA, a national banking corporation, Appellant,

v.

**J. P. OWEN, J. P. Owen, Jr., and J. R. Smith, Appellees.**

No. 9554.

United States Court of Appeals Tenth Circuit.

Feb. 23, 1968.

Kenneth Abernathy, Shawnee, Okl. (Abernathy & Baker, Shawnee, Okl., of counsel, with him on the brief), for appellant.

John W. Swinford, Oklahoma City, Okl. (Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, Okl., of counsel, with him on the brief), for appellees.

Before LEWIS, SETH and HICKEY, Circuit Judges.

SETH, Circuit Judge.

This action for declaratory relief was commenced by the appellees who sought among other things a determination that they had the right to discharge certain

liens filed against oil and gas property owned jointly by them and by Okan Oil Company, one of the defendants. The appellees in their complaint further sought to offset the amounts so paid in discharging the liens against indebtedness due by the defendant, Okan Oil Company, to the appellant and due by appellees to the defendant Okan. The bank in its answer to the complaint cross-claimed against the appellees and asserted that they were liable to the bank by reason of their acceptances of assignments of invoices submitted to them by the bank. These invoices of Okan directed to appellees were assigned by Okan to the bank as security for loans.

The trial court held for the appellees as against the appellant bank and the court further found that the bank had taken the assignments of the invoices subject to the defenses available against its assignor and further that the bank could not invoke the doctrine of estoppel against the appellees.

The record shows that over a period of time, Okan and appellees acquired oil and gas properties in Oklahoma and held them jointly in undivided interests. Okan, on the acquisition of the properties, agreed to drill wells, and this was done under written drilling contracts. Such a contract covering one of the properties first acquired provided not only that Okan would drill the well, but it would also be the operator of the property. This drilling contract also provided that a written operating agreement would be entered into; however, no such formal operating agreement was executed, and the several properties thereafter acquired were operated by Okan under a verbal agreement. The trial court found that there was but one operating agreement, and it covered all the properties. Under this agreement Okan was to purchase the necessary equipment and supplies, to pay all accounts, and to keep the property free of liens. Okan after paying such expenses in full was to then seek reimbursement from the appellees for their pro rata share of such expenses.

It appears that soon after the initial drilling contract was entered into Okan had some financial difficulties. Okan's financial condition worsened as time went on. Its principal owner was killed in an accident, and the company became unable to pay its accounts. The record shows that liens were filed against the jointly owned properties commencing at a time before the invoices here in issue were pledged by Okan to the bank and sent to appellees.

As indicated above, when Okan would procure loans from the appellant it would deliver to the bank invoices directed to appellees for their pro rata share of the expenses to support such loans, and these invoices would be sent to appellees by the bank after the loan was made. In forwarding such invoices, the bank would include an advice of their assignment to it. When these letters with invoices attached were received by the appellees they would write on the bank's notification letter the following:

> "We acknowledge the validity of the above assignments and invoices due Okan Oil Company, Inc. by us. We cannot vouch for any other claims, offsets, liens, or anything beyond our control."

There were a series of such notices of assignment and responses thereto.

The central issue at the trial and on this appeal concerns the legal effect of the assignments of the invoices, the notification of assignment, and the above quoted responses by the appellees.

The appellant here asserts that the trial court was in error in finding that the form of written response made by the appellees to the bank constituted notice that the invoices were subject to the claims of others or to be nullified if liens were filed against the properties. The appellant further claims that by reason of other letters it received from the appellees relative to the appellees' slowness in paying invoices, they were estopped from asserting certain defenses against the bank.

The court, in addition to finding that the responses to the assignments constituted notice of the nature described above, found that when the first loan was made by Okan and secured by invoices, the bank examined a copy of one of the early drilling contracts which provided that appellees could withhold payment in sums due for drilling and equipping the wells until they had received proof that all the bills had been paid by Okan. The court further found that Okan was obligated to discharge all claims for labor and materials and allow no liens against the property before appellees' share of expenses was payable. The trial court also found that the bank knew that Okan was acting as operator of the properties and that the terms of the operating agreement " * * * might contain terms bearing upon the extension of credit to Okan," but the bank made no inquiry as to the terms of such agreement.

The trial court concluded that the appellees never became "an account debtor," by reason of the fact that on the dates of the notifications of the assignments, appellees had a good defense against the claims represented by the invoices and further that a lien "had been vested against each of the jointly owned properties upon which labor and material had been furnished and performed." There appears to be no question that the accounts represented by the invoices in issue were never paid by Okan. Thus the trial court denied recovery to the appellant on its cross-claim against the appellees.

The appellant urges that a proper construction of the "acceptance" by the appellees of the notice of assignment from the bank is that the first sentence constitutes a clear acknowledgment that the invoices were "due" by them to Okan. The argument is also that if the second sentence is repugnant or contradictory to the first, it is the first sentence that must prevail. The Oklahoma cases cited by the appellant hold that construction by the acts of the parties should be adopted if possible. Payne v. King's Van & Storage, Inc., 367 P.2d 173 (Okl.);

Farmer v. Trepp, 376 P.2d 596 (Okl.). This is the general rule, but it does not assist in reaching a solution here as the acts of the parties or either of them do not point to a construction of the whole writing. To be sure, appellees paid some of the invoices, but this does not mean that the writing acknowledged they were all valid. Instead, when the notation taken as a whole is considered together with the appellant's knowledge of the early drilling contract, and the fact Okan was the operator, we are clearly led to the conclusion that the notation constituted notice of possible defenses. The entire notation must so be considered and given consistent effect if possible, as was done by the trial court. Frankfort Oil Co. v. Snakard, 279 F.2d 436 (10th Cir.). It must be borne in mind that we are not concerned with the meaning of a provision in a contract or of an instrument mutually agreed upon, but with the meaning or the message to the appellant contained in the notation. Thus it must be placed with the knowledge appellant had of the circumstances.

The purpose of the appellant bank in sending notice was to let appellees know that the invoice was assigned to it so that payment could be properly directed when made. The record shows that the bank originally provided the form for appellees' receipt of the notice, and this recited only that the assignment had been received and accepted. Appellees changed the form to read as above quoted. The advice from the bank was thus notice of assignment and the response was a notice. These two notices do not add up to an agreement.

The defendant Okan was a customer of appellant, the bank made loans to it, it knew the relationship between Okan and appellees, and knew no partnership existed. Under these circumstances the appellant cannot validly assert that appellees were the ones who had a duty to the bank to keep abreast of Okan's financial condition.

Appellant urges strongly that the doctrine of estoppel or waiver should have been applied by the trial court against

appellees to prevent them from asserting against appellant the defenses available against Okan. This point is based on the advices above described and also upon some correspondence between the bank and appellees in which the bank requested payment of certain invoices. These letters were exchanged at a time when the appellees were slow in paying invoices, and in one of the letters, which antedates the invoices here in issue, appellees stated, "we shall attempt to retire these debts as soon as possible." In another letter appellees said they would pay at least the amount referred to, probably more. The bank urges that these letters, plus the payment by appellees of prior invoices without question, gave appellant every reason to believe that appellees would pay subsequent receivables securing Okan's later notes.

The trial court, in finding no estoppel or waiver, cited and properly relied on Continental Oil Co. v. Rapp, 301 P.2d 198 (Okl.), where the court held there was no estoppel as each of the parties had identical opportunity to know the facts. The bank urges that appellees had the access to knowledge of the facts, and the bank did not; thus estoppel should apply against appellees. However, the record shows and the trial court found that the bank was aware of the no lien requirement of the agreement between Okan and appellees, and it is apparent that the bank had equal or better access to the facts concerning the properties in Oklahoma, and concerning one of its own customers to whom it was lending substantial amounts. The entire argument of the bank is predicated upon an unwarranted assumption that appellees should have better acquainted themselves with Okan's affairs, and a failure to do so rendered them liable to appellant. However, as indicated above, appellees owed no duty to the bank in this area, and further did nothing to mislead the bank as to the facts. The doctrine of estoppel or waiver is not applicable. See Dalton v. LeBlanc, 350 F.2d 95 (10th Cir.) (silence); Hillyer v. Pan American Petroleum Corp., 348 F.2d 613

(10th Cir.); Phillips v. Lagaly, 214 F. 2d 527, 50 A.L.R.2d 626 (10th Cir.); Apex Siding & Roofing Co. v. First Federal Savings & Loan Ass'n, 301 P.2d 352 (Okl.).

The trial court found that there was but one operating agreement covering the several properties, and this is clearly supported by the record. It also appears that there was but one account between appellees and Okan, thus offsets could properly be applied as to expenses pertaining to any or all of the properties.

Affirmed.