## MISSOURI, EX REL. WABASH RAILWAY COMPANY v. PUBLIC SERVICE COMMISSION.

### ERROR TO THE SUPREME COURT OF MISSOURI.

No. 69. Argued December 10, 1926.—Decided January 10, 1927.

Upon review of a judgment of a state court, this Court has jurisdiction to decide questions of state law concerning the construction, and effect on the case, of a state statute enacted since the decision below was made; or it may refer such questions to the state court by reversing and remanding the case. P. 130.

306 Mo. 149, reversed.

ERROR to a judgment of the Supreme Court of Missouri which sustained an order of the Public Service Com-

mission requiring the Wabash Railway Company to abolish a grade crossing in St. Louis. The Chicago, Rock Island & Pacific Railway Company was also a party to the proceedings and joined in suing out the writ of error.

*Messrs. Homer Hall* and *Frederic D. McKenney,* with whom *Messrs. Marcus L. Bell, W. F. Dickinson,* and *Luther Burns* were on the brief, for the plaintiffs in error.

*Messrs. Oliver Senti* and *Marion C. Early,* with whom *Messrs. D. D. McDonald, Julius T. Muench,* and *Lawrence McDaniel* were on the brief, for the defendants in error.

MR. JUSTICE STONE delivered the opinion of the Court.

The mayor of St. Louis instituted a proceeding before the Public Service Commission of the State of Missouri to eliminate a grade crossing of the Wabash Railway Company at Delmar Boulevard in the City of St. Louis. The Commission ordered the Wabash Railway to abolish this grade crossing by depressing its tracks and constructing a viaduct for street traffic, with an 18 feet clearance above the tracks. This order, set aside by the Circuit Court of Cole County, was reinstated by the Supreme Court of Missouri. 306 Mo. 149. The case is here on writ of error to that court on the ground that the order results in an unconstitutional deprivation of property, impairs the obligation of contract, and violates par. 18, § 1, of the Interstate Commerce Act. Jud. Code, § 237, before amended.

All the proceedings below were limited in their purpose and effect to the removal of the single grade crossing named. There is no dispute that the hazardous character of the crossing makes the separation of grades necessary. The controversy arises from the fact that the change in grade at Delmar Boulevard is the initial step in a general

scheme for abolishing all grade crossings within an extensive area of the city. Both the railroad and the city have evolved comprehensive plans for grade crossing elimination. The essential difference between the two programs is that the city proposes the depression of the railroad tracks with a consequent elevation of streets spanning the tracks by viaduct, while the railroad urges the elevation of the tracks upon embankments, leaving the streets at their present level. The Delmar Boulevard crossing is so situated that the Commission's order directing depression of the railroad tracks there is a virtual, though not legal, adoption of the city plan to the extent that other crossings at grade in the vicinity can, as a practical matter, be eliminated only by depressing the tracks. The Commission, however, expressly disclaimed passing on other details of the plan. A consideration of the proposed plans is necessary for a fuller understanding of the issues involved, although our review is limited to the immediate change at Delmar Boulevard directed by the order.

The Wabash Railway passes from Delmar Boulevard southeasterly through a residential district, thence through Forest Park. The location of its tracks within this large public park was fixed by a contract with the park commissioners. The Chicago, Rock Island and Pacific Railway Company, also a party to the proceeding, enters the city from the west, crosses the right of way of the Wabash several squares southeast of Delmar Boulevard, runs parallel, with both the Wabash tracks and the northern end of Forest Park, and then joins the Wabash line, whose tracks it uses through the park to the Union Terminal. Its right to use the tracks is defined by the contract considered in *Joy* v. *St. Louis,* 138 U. S. 1. It is not directly affected by the Commission's order except insofar as the separation of grades at Delmar crossing amounts to an adoption of the city plan causing a change of level of the

Wabash tracks at other crossings and requiring a similar change of its own.

The city plan, in its principal features, calls for the lowering of all the tracks within a cut screened from view, the relocation of the tracks within the park so that the railroad would intersect with fewer streets as it emerges from the park, and the construction of viaducts with a vertical clearance of 18 feet. The plan also provides for the depression or abandonment of part of the Rock Island's tracks, for proper safeguards to be taken to obviate the danger of flood from a neighboring stream, and the purchase of additional land to increase the width of the right of way uniformly to 100 feet within a designated area. The railroad plan makes unnecessary the change of location of the right of way in the park, but involves the construction of unsightly embankments which would materially reduce the value of residential property in the district. Each party makes claim for its plan the advantages of safety, economy, numerous mechanical and engineering conveniences and the avoidance of certain mechanical and engineering hazards, all or most of which, it is insisted, the other lacks. The Commission found that either plan is practicable from an engineering standpoint. The parties differ principally with respect to the prospective costs, the details of which, in view of the disposition to be made of the case, need not be considered.

Treating the Commission's order as an approval and effective adoption of the entire city plan, plaintiffs in error contend that the order deprives them of their property without due process of law; that it impairs the Wabash Railway's charter, its contract with the park commissioners by which the present right of way of the railroad was located in Forest Park, and the contract under which the Rock Island is now using the tracks of the Wabash through the park, all in violation of Article.

I, § '10, of the Constitution. It is also urged that the order by its indirect adoption of the comprehensive city program calling for a partial abandonment and relocation of tracks is invalid as violating par. 18, § 1, of the Interstate Commerce Act, which requires a certificate of public convenience and necessity from the Interstate Commerce Commission before tracks may be abandoned or relocated.

To support the burden of proving that the order of the Commission is arbitrary and unreasonable, plaintiffs in error criticize numerous engineering features of the city's plan, especially the provision of an 18 feet clearance between tracks and viaduct, which is characterized as dangerous to life and limb.

While the federal questions thus raised, so far as they relate to the order now before us, are not difficult of solution, in view of the complexity of the facts to which the principles announced by this Court are to be applied, we cannot say that these questions are so unsubstantial as to deprive us of jurisdiction to pass upon them and to make proper disposition of the case as it is now presented. *Erie R. R.* v. *Pub. Util. Comm.,* 254 U. S. 394; *Mo. Pac. Ry.* v. *Omaha,* 235 U. S. 121; *Denver & R. G. R. R.* v. *Denver,* 250 U. S. 241; cf. *R. R. Comm.* v. *Southern Pac. Co.,* 264 U. S. 331. But we find it unnecessary to decide these questions because of the situation which has been created since the entry of the judgment below by the enactment of the Railroad Clearance Act, Laws of Missouri of 1925, pp. 323, 324. That statute provides that clearances over railroad tracks shall not be less than 22 feet " except in cases in which the public service commission finds that such construction is impracticable." The state Commission directed that the clearance at Delmar Boulevard crossing be 18 feet, but it made no finding that the construction of a 22 feet clearance is impracticable. There is thus presented a question of state law; the effect

of this statute upon the Commission's order, the judgment of the state Supreme Court and upon action taken pursuant to them.

Ordinarily this Court on writ of error to a state court considers only federal questions and does not review questions of state law, *Murdock* v. *City of Memphis,* 20 Wall. 590; *Detroit & Mackinac Ry.* v. *Paper Co.,* 248 U. S. 30. But where questions of state law arising after the decision below are presented here, our appellate powers are not thus restricted. Either because new facts have supervened since the judgment below, *Kimball* v. *Kimball,* 174 U. S. 158; cf. *Watts, Watts & Co.* v. *Unione Austriaca,* 248 U. S. 9, 21; *Meccano, Ltd.* v. *John Wanamaker,* 253 U. S. 136, 141, or because of a change in the law, *Steamship Co.* v. *Joliffe,* 2 Wall. 450; *Gulf, Col. & S. F. Ry.* v. *Dennis,* 224 U. S. 503, this Court, in the exercise of its appellate jurisdiction, may consider the state questions thus arising and either decide them, *Steamship Co.* v. *Joliffe, supra,* or remand the cause for appropriate action by the state courts. *Gulf, Col. & S. F. Ry.* v. *Dennis, supra; Dorchy* v. *Kansas,* 264 U. S. 286. The meaning and effect of the state statute now in question are primarily for the determination of the state court. While this Court may decide these questions, it is not obliged to do so, and in view of their nature, we deem it appropriate to refer the determination to the state court. *Dorchy* v. *Kansas, supra,* 290, 291. In order that the state court may be free to consider the question and make proper disposition of it, the judgment below should be set aside, since a dismissal of this appeal might leave the judgment to be enforced as rendered. *Gulf, Col. & S. F. Ry.* v. *Dennis, supra,* 509. The judgment is accordingly reversed and the cause remanded for further proceedings.

*Reversed.*