**PIERCE COUCH HENDRICKSON BAYSINGER & GREEN,**
Appellee,

v.

**Henry J. FREEDE, Appellant.**

No. 84946.

Supreme Court of Oklahoma.

March 11, 1997.

As Corrected March 20, 1997.

clients' money to his own use and benefit.

Calvin W. Hendrickson, Haven Tobias, Pierce Couch Hendrickson Baysinger & Green, Oklahoma City, for Appellee.

Monty L. Bratcher, Kelly L. Bratcher, Edmond, for Appellant.

HODGES, Justice.

The issues in this case are (1) whether the trial judge properly construed the contract for attorney fees and costs in the underlying case, (2) whether the costs incurred in the underlying case were reasonable, (3) whether the attorneys fee incurred by the plaintiff law firm in the present case were reasonable, and (4) whether the trial judge erred in awarding prejudgment interest.

## I. Facts

The plaintiff in this case is the law firm of Pierce, Couch, Hendrickson, Baysinger & Green (law firm), and the defendant is Dr. Henry J. Freede, a client of the law firm. The law firm represented Dr. Freede in a case filed in federal court against Texas Oil & Gas Corporation (TXO) (case I). The appeal now before this Court (case II) involves the litigation costs incurred by the law firm on behalf of Dr. Freede while representing him in the TXO case (case I). An understanding of the disputes involved in this appeal is dependent on the facts regarding the plaintiff's and defendant's agreements in the TXO case (case I) and their unusual professional relationship.

Dr. Freede was a close friend of Mr. Couch and Mr. Hendrickson, two of the partners in the law firm. Also Dr. Freede's daughter worked for the law firm. Because of his daughter's employment with the law firm, Dr. Freede hired the firm to represent him in a case known as the Sante Fe case. The parties orally agreed on a contingent fee arrangement in which the costs of the litigation were paid, then the parties divided the remaining recovery, one third to the firm and the other two thirds to Dr. Freede. The matter was settled, and Dr. Freede received about $19,000 as his share.

Through his daughter, Dr. Freede invited the law firm to take the TXO case (case I) on the same basis as the Sante Fe case. The issues in the TXO case (case I) were similar to those in the Sante Fe case. Dr. Freede believed TXO was not paying him as much money as they should for his interest in certain wells operated by TXO. The law firm agreed to represent Dr. Freede. Once again the agreement was oral.

Mustang Production Company (Mustang) had interests in these same wells and believing that it, like Dr. Freede, had not received the full amount to which it was entitled, wished to enter the suit between Dr. Freede and TXO. The law firm sent Mustang a letter stating that it would represent Mustang on a contingent fee arrangement for one-third of the recovery after expenses and that Mustang would have to share in the cost of the suit if allowed to enter even if there was no recovery. Mustang countered with a letter setting out the following terms.[1] In

---

**1.** The contents of the letter dated February 5, 1988, are as follows:

Gentlemen:

I am responding to John Couch's letter of January 25, 1988. We agree that the Pierce Couch law firm will represent Mustang Production Company on a one-third contingency fee basis, and that after recovery or settlement is obtained, the cost of litigation and expenses incurred will be deducted from the total amount recovered. At that time, the balance (the remaining two-thirds) will be divided between Mustang and Freede on the following basis:

| 2.000000% | Freede (owns in 13 wells) |
| 4.698012% | Mustang (owns in 8 of the 13 wells) * |

| 6.698012% | = | 100% of total revenue |

$$\text{Freede receives} \quad \frac{2}{6.698012} = 29.86\% \text{ of total } \tfrac{2}{3} \text{ of the distribution}$$

$$\text{Mustang} \quad 4.698012 = 70.14\% \text{ of total } \tfrac{2}{3} \text{ of the distribution}$$

exchange for the firm representing Mustang and for Dr. Freede allowing Mustang to enter the case, the costs would first be paid from any recovery, then the firm would receive one-third of the remainder of the recovery, and the remaining two-thirds would be divided 70.14 percent to Mustang and 29.86 percent to Dr. Freede.[2] If the recovery were insufficient to cover the costs, Mustang would pay 70.14 percent of the costs of the litigation. Dr. Freede, a representative of Mustang, and a representative of the law firm signed the letter agreement. The agreement did not state what would happen should one of the plaintiffs settle, leaving the other as the sole remaining plaintiff.

In December 1988, Mustang settled with TXO for what is believed to be $75,000. The firm, without consulting Dr. Freede, accepted Mustang's payment of $25,000. Of the payment, $10,481.04 was applied to expenses, and the firm retained the remaining $14,518.96 as attorney fees. Dr. Freede did not receive any funds from the settlement. On December 20, 1988, after Mustang settled, the firm sent Dr. Freede a statement showing costs of $10,481.04. At the time, Dr. Freede did not dispute any of this bill.

Before the statement of December 20, 1988, the firm had requested Dr. Freede pay a bill of $7,926.08 directly to Waterman & Company Oil and Gas Consultants for expert witness and consulting fees. Without protest, Dr. Freede paid this bill on February 19, 1988. This expense was not included in Dr. Freede's statement of December 1988, in the calculation of expenses prior to Mustang's settling, or in the calculation of Mustang's share of the expenses.

The only costs that Dr. Freede questioned before being sent the final statement was that of Ken Manes, a consultant. Sometime before July 22, 1991, Dr. Freede requested that the law firm dismiss Ken Manes because Dr. Freede thought his testimony was duplicative. The law firm did not dismiss Mr. Manes. The costs for Mr. Manes after the date that Dr. Freede sought his dismissal were $1,000 and $1,800 for a total of $2,800. Other than this request, Dr. Freede did not question or protest the costs while they were being incurred.

The litigation continued with only Dr. Freede as the plaintiff. The matter went to trial in federal court. After the evidence was presented, the law firm requested the judge lift the cap on the punitive damages. The trial judge refused. Until this refusal both Dr. Freede and the law firm anticipated the recovery of substantial punitive damages. In fact, plaintiff's exhibit 5, which is plaintiff's response to Dr. Freede's interrogatories, shows TXO offered Dr. Freede $85,000 to settle the case. The attorneys for TXO stated they would recommend $100,000 as a settlement to TXO. In anticipation of a large punitive damage recovery, Dr. Freede countered with an offer of $250,000. TXO did not respond to this counteroffer. The matter went to trial, and the jury found for TXO, resulting in no recovery by Dr. Freede.

There was a great deal of discovery after Mustang was dismissed from the suit including 27 depositions. During this time, the law firm rented a "war room" at a cost of $560.00. About one year and nine months after the close of the litigation, the firm billed Dr. Freede $26,285.54 for the costs of

receives 6.698012

[*] Mustang's interest: .0763427 x %13 = 4.698012

Since Mustang has an interest in only 8 of the 13 wells involved, (Kennedy G # 1, Kennedy G # 2, Kennedy G # 3, Kennedy G # 4, Moberly # 1, Heupel # 2, Heupel # 3, and Riley D # 1) we suggest the above formula be used to distribute proceeds based on ownership of a gross working interest of 2.000000 (Freede) and 7.634272 (Mustang) and based on Mustang owning in %13 of the wells and Freede owning in $^{13}$/13 of the wells.

If Mustang is permitted to be added as a party plaintiff in captioned case, Mustang agrees to pay 70.14% of the reasonable costs incurred by Pierce Couch et al. firm in captioned lawsuit if the amount recovered from the defendant, Texas Oil & Gas Corp., is not sufficient to cover those costs.

**2.** These percentages represent their respective proportionate shares in the wells.

the litigation incurred after Mustang settled. These costs were in addition to the $21,956.42 [3] which Dr. Freede had paid directly to the providers without protest.

When presented with a statement from the law firm for costs incurred by them, Dr. Freede refused to pay, arguing he was responsible for only 29.86 percent of the costs. Thereafter, the law firm brought this action (case II) against Dr. Freede seeking to recover $26,285.54. The trial judge, the Honorable Bryan C. Dixon, found that the law firm had neglected to include the February 19, 1988, payment to Waterman made directly by Dr. Freede when calculating Dr. Freede's pro rata share of the costs before Mustang settled. Because of this error, the trial judge found Dr. Freede was entitled to a credit of $2,429.71.[4] The trial judge also found that the $560.00 for a "war room" was not necessary. Recalculating the costs, the trial judge found Dr. Freede had a balance of $23,295.83 owing to the law firm and entered judgment against Dr. Freede and for the law firm.

Thereafter, the law firm filed a motion for attorney fees incurred in the case at bar (case II) of $16,095.00 for attorney fees; $9,346.50 for legal assistant, intern, and law student fees; and $1,001.57 for costs and for prejudgment and post-judgment interest on the $23,295.83 judgment. The parties stipulated to a reasonable hourly rate for Mr. Hendrickson, the only attorney presenting the law firm in this litigation, of $150.00 and the reasonable hourly rate of $55.00 for legal interns and $45.00 for law students. Dr. Freede disputed $70.00 as a reasonable hour-

ly rate for the legal assistant proposing $50.00 an hour to be a reasonable rate.

In addition to the reasonable hourly rate for legal assistants, Dr. Freede also opposed the number of hours devoted to the matter by the law firm's attorney and by the legal assistants, the legal intern, and the law student to the matter. Further, Dr. Freede contested the amount of court costs in the present case and the award of prejudgment interest on the $23,295.83 judgment for the costs incurred in the TXO case (case I).

The trial judge held a hearing on the disputed matters. The law firm presented William Burkett as an expert witness. Mr. Burkett testified as to the reasonableness of the hourly fees and the time expended in the matter. Dr. Freede's attorney cross examined Mr. Burkett but did not produce a witness to testify to the contested matters.

The trial judge entered an order findings that (1) the reasonable number of hours for the law firm's attorney was 102.3, which yielded a fee of $15,345.00, (2) the reasonable number of hours for the legal assistant was 111.3 and a reasonable hourly fee was $70.00, which yielded a fee of $7,791.00, (3) the reasonable number of hours for the intern was .9, which yielded a fee of $49.50, (4) the reasonable number of hours for the law student was 9.2, which yielded a fee of $414.00; (5) the reasonable fee for the attorney, intern, law student, and legal assistants was $23,599.50, and (6) the reasonable court costs were $179.00 and reasonable copying costs were $32.90 for copies at $.10 a page yielding a total of $211.90 in costs. The trial judge also awarded $3,747.50 in prejudgement interest on the $23,295.83 in costs incurred in

**3.** The $21,956.42 includes the $7,926.08 paid by Dr. Freede on February 19, 1988, before Mustang's settlement.

**4.** The trial judge calculated the $2,429.71 credit as follows:

| | | |
|---|---:|---|
| | $ 10,481.00 | the amount of the 12/20/88 bill |
| + | 7,926.08 | the costs paid directly by Dr. Freede before 12/20/88 |
| | 18,407.12 | total costs incurred before 12/20/88 |
| * | .2986 | percent of costs incurred before 12/20/88 for which Dr. Freede is liable |
| | $ 5,496.37 | amount of costs incurred before 12/20/88 for which Dr. Freede is liable |
| | $ 7,926.08 | costs paid directly by Dr. Freede |
| − | 5,496.37 | Dr. Freede's liability for costs incurred before 12/20/88 |
| | $ 2,429.71 | credit to Dr. Freede |

the TXO case (case I), and post-judgment interest on the $23,295.83 judgment and on the $3,747.50 in prejudgment interest.

## II. Issues on Appeal

Dr. Freede appealed the judgment of the trial court for the expenses incurred in the TXO case along with the prejudgment and post-judgment interest and the order of the trial court for the fees and costs of the present litigation. On appeal, Dr. Freede argues (1) he was responsible for only 29.86 percent of the litigation costs incurred after Mustang was dismissed from the TXO case (case I), (2) the expenses in the TXO case (case I) were unreasonable, (3) because the costs incurred in the TXO case (case I) were unliquidated damages, the award of prejudgment interest was improper, and (4) the amount of time expended by the attorney, legal assistant, intern, and law student and allowed by the trial judge was unreasonable. The Court of Appeals reversed and held (1) the letter agreement of February 5, 1988, signed by the law firm, Mustang, and Dr. Freede controlled, (2) the agreement only obligated Dr. Freede to pay 29.86 percent of the total costs, even those incurred after Mustang settled and was dismissed, and (3) the trial judge had erred in rendering judgment for the law firm. This Court granted certiorari.

## III. The Essence of the Contract between the Law Firm and Dr. Freede

The first issue to be addressed is the terms of the contract between the law firm and Dr. Freede in the TXO case (case I). Both parties agree that the letter agreement of February 5, 1988, is a binding contract but dispute the construction of the contract. Dr. Freede argues that, under the contract, he was obligated to pay only 29.86 percent of the expenses incurred until the end of trial. The law firm argues that Dr. Freede was obligated to pay 29.86 percent of the expenses prior to Mustang's settlement of and dismissal from the case and 100 percent thereafter.

■ To resolve this dispute, we turn to sections 152, 155, 157, and 166 of title 15 of the Oklahoma Statutes. Section 152 provides: "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." Section 155 provides: "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article." One of the other provisions of title 15 is section 157, which provides: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." Section 166 provides: "Particular clauses of a contract are subordinate to its general intent."

The contract provides in part:

We agree that the Pierce Couch law firm will represent Mustang Production Company on a one-third contingency fee basis, and that after recovery or settlement is obtained, the cost of litigation and expenses incurred will be deducted from the total amount recovered. At that time, the balance (the remaining two-thirds) will be divided between Mustang and Freede on [a pro rata basis]. If Mustang is permitted to be added as a party plaintiff in captioned case, Mustang agrees to pay 70.14% of the reasonable costs incurred by the Pierce Couch et al. firm in captioned lawsuit if the amount recovered from the defendant, Texas Oil & Gas Corp., is not sufficient to cover those costs.

Dr. Freede asks this Court to consider this last sentence in isolation. Under this theory, the total expenses of the litigation would be subtracted from Mustang's $75,000 recovery, and Dr. Freede would have received 29.86 percent of the remainder of Mustang's settlement. In *Mercury Inv. Co. v. F.W. Woolworth Co.*,[5] this Court stated: "A contract must be considered as a whole so as to give effect to all it provisions without narrowly concentrating upon some clause or language taken out of context." We refuse to consider

---

**5.** 706 P.2d 523, 529 (Okla.1985).

the language relied on by Dr. Freede without considering the contract as a whole.

■ Considering the contract as a whole, it is clear that the parties intended that Mustang's obligation for the costs would extend only until recovery or settlement and that Mustang did not intend to pay expenses incurred solely on behalf of Dr. Freede after Mustang settled.[6] Likewise, had Dr. Freede settled his claim leaving Mustang as the sole plaintiff, it is clear that he did not intend to be obligated to pay 29.86 percent of the expenses incurred solely on behalf of Mustang—the result if Dr. Freede's argument were accepted.

Assuming that the language in the contract were ambiguous, the result would be the same. Where there is a latent ambiguity in a contract, parol evidence may be used to explain the meaning.[7] In this case if there exist an ambiguity, it is latent in that it does not appear on the face of the document. It arose only as a result of Mustang settling its claim and Dr. Freede refusing the settlement offer, leaving only his claim to be decided by the court.

■ In the event of an ambiguity, the court may look to the acts and conduct of the parties.[8] If a doubt existed as to the intent of the parties, it has been resolved by their actions. Where a contract is susceptible to more than one interpretation, the construction given the contract by the actions of the parties will be given great weight.[9] In the present case, when Mustang settled with TXO, it paid the law firm $25,000 of which part went to pay the costs and the remainder to pay fees including over $7,000 to Dr. Freede's daughter. No part of the settlement was paid to Dr. Freede. Upon receiving the statement showing how the $25,000 was disbursed, Dr. Freede failed to object or make demand for a pro rata share of the settlement. On several occasions, both before and after the settlement, the law firm requested that Dr. Freede pay 100 percent of several bills directly which he did without protest. Only after Dr. Freede was sent a bill for the balance of costs did he complain. The actions of the parties after the settlement show that the parties did not intend for either Mustang or Dr. Freede to be responsible for expenses incurred entirely for the benefit of the other after one party settled.

## IV. Effect of Alleged Violations of the Oklahoma Rules of Professional Conduct

■ Dr. Freede relies heavily on alleged violations of the Oklahoma Rules of Professional Conduct to relieve him of his responsibility for paying the costs of litigation incurred exclusively on his behalf. He argues that the law firm violated the Rules of Professional Conduct by not entering into a written contingency agreement when he first employed them to represent him.[10]

A similar argument was addressed in *Oklahoma Turnpike Authority v. Horn,*[11] in which this Court recognized the limiting language of the Rules when it reiterated the section defining the scope of the Rules:

> Violation of a Rule should not give rise to a cause of action nor should it create [a] presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning

---

6. *See* Okla.Stat. tit. 15, §§ 152, 155, 157 (1991).

7. *Id.*

8. *Id.*

9. *Payne v. King's Van & Storage, Inc.,* 367 P.2d 173, 176 (Okla.1961); Restatement (Second) of Contracts § 202 (1979).

10. The law firm takes the position that a written agreement was not required under the rules governing lawyers which were in effected at the time that Dr. Freede first hired the law firm to represent him. Because we find that the Rules of Professional Conduct are not a basis for negating liability for costs in this case, we need not address the law firm's position.

11. 861 P.2d 304, 307 (Okla.1993).

a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.[12]

In *Horn*, this Court disallowed the Rules to be used to negate liability for attorney fees. Likewise the Rules cannot be used as a basis for negating liability for costs in the present case. Thus, we reject this argument of Dr. Freede.

### V. Reasonableness of Expenses in the TXO case (case I)

■ The reasonableness of expenses is reviewed under the abuse of discretion standard.[13] The trial judge corrected the expenses to reflect the payments Dr. Freede made directly to providers before Mustang's settlement. Thus, the trial judge determined Dr. Freede was entitled to a credit of $2,429.71. The judge also deducted $560.00 for the cost of renting the "war room". The judge then entered judgment for the law firm for $23,295.83.

■ At the hearing, a legal assistant testified that they charged $.20 a page for copying. There was also testimony that the number of pages of in-house copies was the cost divided by the $.20 per page charge. The December 20, 1988 statement reflected a charge of $610.40 for a total of 3,052 copies at $.20 a page. The final statement shows the in-house costs of the copies after Mustang settled was $4,655.70 at $.20 a page. The exhibits reflect that outside printing costs were $.06 and $.07 a page except those of the United States District Court for the Western District of Oklahoma which included a re-

trieval fee. Section 942(4) of title 12 of the Oklahoma Statutes limits the award of costs for copying to $.10 a page. Although this statute is not controlling in recovering costs from a client, we determine $.10 a page to be a reasonable cost, especially in light of the fact that outside copying cost $.06 to $.07 a page. Thus, Dr. Freede should have been given credit for the excessive charges for copies.[14]

■ The testimony was that Dr. Freede told the law firm that he wanted Ken Manes, a consult, dismissed before his next to last bill. Dr. Freede thought that his services were duplicative. However, the law firm did not dismiss Ken Manes upon Dr. Freede's request. Given these facts, it was unreasonable for the law firm to have incurred the additional expenses. Thus, Dr. Freede should have been given credit in the amount of $2,800 for these costs.

■ Dr. Freede argues that expenses were unreasonable given the belief that the actual damages were thought to be $20,000. As discussed above, both the attorneys and Dr. Freede believed the punitive damages would be much more. In fact, Dr. Freede rejected a settlement offer of $100,000 and countered with an offer of $250,000. Given that the attorneys and Dr. Freede thought the punitive damages to be substantial, the costs were not excessive except as modified herein.

### VI. Prejudgment Interest

The trial judge found that, pursuant to section 22 of title 23 of the Oklahoma Statutes, the law firm was entitled to prejudgment interest at a rate of 6.99 percent for a total of $3,747.50 on the judgment for costs incurred in the TXO case (case I). Dr. Freede argues that under section 6 of title 23,[15]

---

**12.** Oklahoma rules of Professional Conduct, Okla.Stat. tit. 5, ch. 1, app. 3A, Scope (1991).

**13.** *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 663 (Okla.1979).

**14.** For the copying costs incurred before 12/20/88, a credit of $305.20 of which Dr. Freede received 29.86%, and for those incurred thereafter, a credit of $2,327.85 of which Dr. Freede received 100% should have been given.

**15.** Okla.Stat. tit. 23, § 6 (1991), provides:

Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.

an award of prejudgment interest was error because the damages were unliquidated.

■ We addressed a similar issue in *Withrow v. Red Eagle Oil Company*.[16] In *Withrow*, the plaintiff argued that, pursuant to section 21 which provided for damages for breach of contract, it was entitled to prejudgment interest even though the amount was unliquidated. Section 21, like section 22, provides that damages for a breach of contract include "all the detriment proximately caused" by the breach. This Court found that section 6, which provides for interest only on liquidated damages, the more specific provision, controlled over section 21, the more general provision. Thus, this Court rejected the distinction between the award of interest as part of the damages and the award of prejudgment interest on the damages.[17]

Like section 21, section 22 is a general statute regarding the measure of damages for breach of contract. As in *Withrow*, section 6, the more specific statute, controls over section 22, the more general statute. Further, we see no valid distinction between prejudgment interest as a part of the damages for breach of contract and prejudgment interest upon the damages. Thus, section 6 is the applicable statute.

■ Under section 6, the damages must be liquidated to be recoverable. A similar issue was address in *United States v. Hardage*,[18] where the Tenth Circuit Court of Appeals reversed the district court's award of prejudgment interest on attorney fees. Because the determination of the reasonableness of attorney fees was for the fact-finder, the fees were not capable of ascertainment and, thus, unliquidated.[19] Like the attorney fees in *Hardage*, the expenses in the present case were subject to the fact-finders determination of reasonableness. Thus, they were not liquidated and not subject to prejudgment interest.

## VII. Attorney Fees in the Case at Bar (case II)

At the close of trial in the case at bar (case II), the law firm filed a motion for an award (1) of attorney fees in the amount of $16,095.00, (2) of legal assistant, intern, and law student fees in the amount of $9,346.50, (3) of costs in the amount of $1,001.57, and (4) of prejudgment interest. Dr. Freede contests the reasonableness (1) of the hourly rate for the legal assistants, (2) of the number of hours for the attorney, legal assistants, legal intern, and the law student, (3) of the amount of costs, and (4) of the award of prejudgment interest. We addressed the award of prejudgment interest above in part VI.

The law firm presented an expert witness who testified that the number of hours and the hourly rate requested by the law firm were reasonable. Dr. Freede cross-examined this witness but did not offer a witness in support of his position. The trial judge reduced the amounts as stated earlier in part I.

■ Dr. Freede argues that several of the hours spent by the attorney and the legal assistants were not recoverable. For example, he argues that legal assistant's time spent notifying the law firm's errors and omissions company was not work that would otherwise have to be performed by an attorney. We agree with Dr. Freede that the 4.2 hours spent by the legal assistant to notify the law firm's errors and omissions company was not substantive legal work and is not recoverable.[20]

■ Without pointing to any particular factor which was violated, Dr. Freede argues that the award was not in keeping with the factors in *State ex rel. Burk v. City of Oklahoma City*.[21] Reviewing the award for an abuse of discretion under *Burke*, we find the award, other than for the fees of the legal

**16.** 755 P.2d 622, 625 (Okla.1988).

**17.** *Id.* at 624.

**18.** 985 F.2d 1427, 1438 (10th Cir.1993) (applying Oklahoma law).

**19.** *Id.; see Withrow*, 755 P.2d at 625.

**20.** *Taylor v. Chubb Group of Ins. Cos.*, 874 P.2d 806 (Okla.1994).

**21.** *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 663 (Okla.1979).

assistant for notifying the law firm errors and omissions company, was reasonable.

## VIII.  Appeal–Related Attorney Fees

■ The law firm has filed for appeal-related attorney fees pursuant to sections 696.4 and 936 of title 12 of the Oklahoma Statutes.  Because we reverse in part and affirm in part as modified the judgment of the trial court, we find that the law firm's motion for appeal-related attorney fees should be denied.[22]

## IX.  Conclusion

The trial judge correctly determined that the law firm was entitled to collect the reasonable costs of the TXO case (case I) incurred before December 20, 1988; from appellant, Dr. Freede, at a rate of 29.86 percent and thereafter at a rate of 100 percent of reasonable costs.  However, the trial court erred in calculating the reasonable amount of copying and consulting and expert witness expenses and in awarding prejudgment interest for costs incurred in the TXO case (case I).  The trial court also erred in calculating the reasonable legal assistant fees for costs incurred in the present case (case II).

The trial court's judgment and order on attorney fees are modified to award the plaintiff, the law firm of Pierce Couch Henderickson Baysinger & Green, costs in the amount of $18,076.86 for costs incurred in the TXO case (case I) [23] and post-judgment interest as permitted by law thereon and attorney fees and costs in the present case (case II) in the amount of $23,305.50 [24] for attorney fees, including legal assistants, legal intern, and law student, court costs in the sum of $211.90, and post-judgment interest thereon as permitted by law.  The Court of Appeals opinion is vacated.  The trial court's judgment is affirmed in part and reversed in part as modified, and the trial court's order awarding attorney fees for prosecuting this case is affirmed in part as modified and reversed in part.

COURT OF. CIVIL APPEALS' OPINION VACATED;  JUDGMENT OF TRIAL COURT AFFIRMED IN PART AS MODIFIED, REVERSED IN PART;  POST–JUDGMENT ORDER OF TRIAL COURT AFFIRMED IN PART AS MODIFIED, REVERSED IN PART.

LAVENDER, SIMMS, JJ., and CHAPEL and LANE, Special Judges, concur, sitting in lieu of OPALA, J. and ALMA WILSON, J. who certified their disqualification.

22.  Okla.Stat. tit. 12, § 936 (1991).

23.  The amount of $18,076.86 was computed as follows:

| | | |
|---|---|---|
| $ | 10,481.00 | bill of 12/20/88 |
| − | 305.20 | overcharge for in-house copies before 12/20/88 |
| + | 7,926.08 | costs directly paid by Dr. Freede and not included in 12/20/88 bill |
| | 18,101.92 | total costs as of 12/20/88 as corrected by this Court |
| × | .2986 | percent of costs for which Dr. Freede is liable |
| $ | 5,405.25 | Dr. Freede's portion of the costs incurred before Mustang's settlement |
| $ | 7,926.06 | direct payments by Dr. Freede |
| − | 5,404.25 | Dr. Freede's portion of the costs incurred before Mustang's settlement |
| $ | 2,520.83 | credit resulting from overpayment by Dr. Freede on 12/20/88 bill |
| $ | 25,725.54 | costs incurred after 12/20/88 as allowed by trial judge and not paid directly by Freede |
| − | 2,800.00 | expert witness fees disallowed by this Court |
| − | 2,327.85 | overcharge for in-house copies disallowed by this Court |
| $ | 20,597.69 | costs incurred after Mustang's settlement which have not been paid directly by Dr. Freede and for which he is liable |
| − | 2,520.83 | credit for overpayment of 12/20/88 bill |
| $ | 18,076.86 | remaining to be paid by Dr. Freede |

24.  The amount $23,305.50 was determined by taking the trial court's award of $23,599.50 and subtracting $294.00 disallowed by this Court for legal assistant fees.

KAUGER, C.J., and SUMMERS, V.C.J., concur in part; dissent in part.

HARGRAVE and WATT, JJ., dissent.