1999 OK 61

**Robert M. HOOVER, Jr., Appellee,**

v.

**The KIOWA TRIBE OF OKLAHOMA, Appellant.**

No. 87,139.

Supreme Court of Oklahoma.

June 29, 1999.

William J. Robinson, Oklahoma City, Oklahoma, for Appellee and Cross–Appellant.

R. Brown Wallace, Oklahoma City, Oklahoma, Appellant and Cross–Appellee.

SUMMERS, C.J.:

¶ 1 This Court issued an opinion in this case on April 13, 1998. Consistent with an earlier opinion resolving a contractual dis-

pute between the same parties in favor of the Plaintiff/Hoover and against the Defendant/Tribe, that earlier case being known as *Hoover v. Kiowa Tribe of Oklahoma,* 909 P.2d 59 (Okla.1995), *cert. denied,* 517 U.S. 1188, 116 S.Ct. 1675, 134 L.Ed.2d 779 (1996), (hereinafter *Hoover I* ) we affirmed summary judgment in favor of Hoover on a promissory note. Although in the first case the Tribe's petition for certiorari was denied by the United States Supreme Court, in this second case it was granted. We prematurely issued the mandate in this case prior to the U.S. Supreme Court notifying us of certiorari being granted by that Court. We hereby recall the mandate as erroneously issued.

¶ 2 On October 8, 1998 the Clerk of the Supreme Court of the United States mailed to the Clerk of this Court a file-stamped copy of the following order with respect to this case, or *Hoover II.*

> The petition for a writ of certiorari is granted. The judgment is vacated and the case is remanded to the Supreme Court of Oklahoma for further consideration in light of *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.,* 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981(1998).

Upon reconsideration we overrule our earlier opinion and remand to the trial court.

¶ 3 The case arose out of an action in state court, initiated by Hoover against the Kiowa Tribe for default on a note. In the first action the trial court dismissed the action on the basis of tribal sovereign immunity. This Court reversed, holding that state courts have jurisdiction over Indian Tribes in contract disputes where the contract was executed outside of Indian country between a tribe and a non-Indian. *Hoover I, supra.* On remand to the trial court after this Court's opinion in *Hoover I,* the trial court granted summary judgment to Hoover on his promissory note. The Tribe appealed, and we retained the case.

¶ 4 In the second opinion, *Hoover v. Kiowa Tribe of Oklahoma,* 1998 OK 23, 957 P.2d 81 (Okla.1998)(hereinafter *Hoover II* ), this Court added detail to its earlier reasoning in *Hoover I.* The Court analyzed certain

historical events in Oklahoma, including the adoption of the Organic Act of 1890, 26 Stat.81 the Enabling Act, 34 Stat. 267 and the Oklahoma Constitution, which, the Court concluded, supported its decision in *Hoover I* that Oklahoma courts have jurisdiction over litigation against Indian tribes. Again affirming the state court's authority over this contract dispute, the Court concluded the "the legal status of the Tribe in its contractual relationship with Hoover to be that of a private party and subject to the jurisdiction of this state." *Id.* at 96. It is *Hoover II* that is before us now on remand from the United States Supreme Court.

¶ 5 After *Hoover II* was decided by us the United States Supreme Court decided *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.,* 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998), granting certiorari to review an unpublished Oklahoma Court of Civil Appeals opinion that had relied on *Hoover I* in holding against the Tribe. The Supreme Court there revisited the concept of Indian tribal immunity from suit. With facts nearly identical to the facts in the case at bar, an obligee brought suit in state court to recover on a promissory note executed by the Tribe. The Tribe moved to dismiss based on tribal sovereign immunity from suit. There the U.S. Supreme Court held that "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Id.* at 1702. The Court further noted that thus far, no distinction has been drawn as to whether the activity is commercial or governmental. *Id.* "[T]ribal immunity is a matter of federal law and is not subject to diminution by the States." *Id.* at 1702. "As sovereigns or quasi-sovereigns, the Indian nations enjoyed immunity 'from judicial attack' absent consent to be sued." *Id.* at 1703, quoting *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894 (1940).

¶ 6 This recent U.S. Supreme Court decision dictates that this Court's earlier opinion in *Hoover II* be overruled.[1] We so

---

1. The dissenting opinion's argument that the

Tribe waived its immunity from suit in this trans-

hold. The U.S. Supreme Court has in this case vacated the judgment of the District Court which we, by our opinion in *Hoover II*, had previously affirmed. On remand from the U.S. Supreme Court we in turn remand the cause to the District Court of Oklahoma County with instructions to enter judgment for the Tribe.

¶ 7 SUMMERS, C.J., LAVENDER, KAUGER, JJ.—concur.

¶ 8 SIMMS, WATT, JJ.—concur in deference to stare decisis.

¶ 9 HARGRAVE, V.C.J., HODGES, OPALA, WILSON, JJ.—dissent.

ALMA WILSON, J., with whom HARGRAVE, V.C.J., and HODGES and OPALA, JJ., join, dissenting:

¶ 1 The only question presented by the United States Supreme Court's remand to this Court is whether the appellant is entitled to relief under the opinion promulgated in *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998) (*Manufacturing*). Consideration of our opinion herein, *Hoover v. The Kiowa Tribe of Oklahoma*, 1998 OK 23, 957 P.2d 81 (*Hoover*), in light of *Manufacturing*, convinces me that no relief

is warranted. Accordingly, I respectfully dissent.

¶ 2 Preliminarily, I am compelled to address two statements in today's opinion that are unmistakably erroneous. First, our mandate in this cause was neither prematurely nor erroneously issued. Our opinion herein was filed with the Clerk of this Court on March 17, 1998, and rehearing was not sought.[1] Consequently the mandate issued on April 17, 1998, within the orderly process established by this Court's rules.[2]

¶ 3 This Court has a long-standing tradition of staying the effectiveness of its mandate where review is sought in the United States Supreme Court.[3] Under Rule 1.16,[4] the party seeking review in the United States Supreme Court has a duty to ask this Court to suspend effectiveness of mandate. Even after the filing in the United States Supreme Court, no motion to suspend the effectiveness of the mandate was filed herein. Consequently, our mandate has been in effect since it properly issued.

¶ 4 The receipt, on June 19, 1998, of a letter from the Clerk of the United States Supreme Court dated June 16, 1998, advising that a petition for writ of certiorari was filed, did not render our mandate premature nor error.[5] Notwithstanding, an effective man-

---

action is clearly in error. Both the note upon which the suit is founded and the attendant security agreement provide:

"Nothing in this (note)(agreement) subjects or limits the sovereign rights of the Kiowa Tribe of Oklahoma."

1. No petition for rehearing was filed under Rule 1.13. Okla.Sup.Ct.R.,12 O.S.Supp.1998, ch.15, app.1.

2. Mandate is the official communication of the appellate judgment to the inferior tribunal. *Davis v. Baum*, 1943 OK ——, 133 P.2d 889. Issuance of mandate is governed by Rule 1.16. Okla.Sup.Ct.R., 12 O.S.Supp.1998, ch.15,app.1.

3. *Application of Oklahoma Capitol Improvement Authority*, 1998 OK 25, 964 P.2d 873, 874, dissenting opinion by Opala, J.

4. Rule 1.16 reads:

In every appeal or petition to review any order of a district court or other tribunal, a mandate will be issued to the lower court or tribunal on order of the Chief Justice upon

conclusion of the matter on appeal. The mandate may be issued seven (7) days after the filing of an order denying certiorari or rehearing in the Supreme Court or expiration of time to file a petition for certiorari or petition for rehearing, and disposition of any timely filed post-decisional motion. No mandate is issued upon conclusion of original actions, questions certified by federal courts, bar disciplinary matters, or original proceedings on initiative or referendum petitions.

If a party contemplates the filing of a petition for writ of certiorari in the United States Supreme Court, the party may file a motion to suspend the effectiveness of the mandate. The effectiveness of the mandate may be suspended upon order of this Court until expiration of time to file the petition or notice of final disposition by the United States Supreme Court.

5. The letter from the Clerk of the United States Supreme Court did not interfere with our mandate. Whether our mandate is stayed or suspended remained the responsibility of the petitioner.

date may be recalled upon a proper motion.[6] No motion to recall mandate has been filed and this Court has no vehicle for recalling our duly issued and effective mandate.

¶5 Second, the United States Supreme Court has not "in this case vacated the judgment of the District Court." The United States Supreme Court issued its discretionary order,[7] granting certiorari, vacating this Court's judgment, and remanding the cause to this Court.[8] The GVR order is not premised upon a determination that a grant of certiorari and eventual reversal are probable,[9] nor does it imply disapproval of this Court's opinion.[10] Instead, the GVR order issued to give this Court the opportunity to review this cause in light of the intervening development of the United States Supreme Court's opinion in *Manufacturing*.[11]

¶6 The principle established in *Manufacturing* is that, as a matter of federal law, an Indian tribe is subject to suit on its contracts only where Congress authorizes the suit or the tribe waives its tribal immunity. Our judgment in *Hoover* rests upon congressional acts authorizing the exercise of judicial jurisdiction over Oklahoma Indian tribes and our *Hoover* opinion noted evidence whereby the Kiowa Tribe of Oklahoma (Tribe) agreed to be subject to the rights and remedies provided in the Uniform Commercial Code (UCC). Accordingly, I am convinced that the GVR order does not command today's summary reversal.[12]

¶7 Although the Tribe is not entitled to any relief under its contract with Hoover, it is appropriate to briefly explain why the *Manufacturing* opinion does not alter the legal basis of our *Hoover* opinion. The *Hoover* opinion analyzed congressional acts leading to Oklahoma statehood against a backdrop of the congressional policy of assimilation of the Indians[13] and found congressional authority for suits against Okla-

---

6. Ordinarily mandate will not be recalled unless it was issued through inadvertence or mistake or failure to recall will cause unavoidable casualty; and, where mandate issues in violation of this Court's rules it will be deemed issued through inadvertence or mistake and upon proper application, it will be recalled. *Thompson v. Nickle*, 1925 OK ——, 239 P. 649.

7. The discretionary order, **(G)**ranting certiorari, **(V)**acating judgment, and **(R)**emanding for further consideration, is an integral part of the United States Supreme Court's administration of its certiorari docket. The GVR order is appropriate where an intervening development may affect the ultimate outcome of a case, and over the past fifty years, its use has been extended to a wide-range of intervening developments. *Lawrence v. Chater*, 516 U.S. 163, 166, 116 S.Ct. 604, 606, 133 L.Ed.2d 545, 554 (1996). The GVR practice originated to show special deference to state law and state courts in our system of federalism, for instance: *Missouri ex rel. Wabash R. Co. v. Public Service Commission*, 273 U.S. 126, 47 S.Ct. 311, 71 L.Ed. 575 (1927), the Missouri Supreme Court judgment was vacated and the case was remanded so the state court could decide the effect of an intervening state statute; and, *State Tax Commission v. Van Cott*, 306 U.S. 511, 59 S.Ct. 605, 83 L.Ed. 950 (1939), the deferential approach allowed the Utah Supreme Court to reconsider the basis upon which its opinion rested in light of an intervening United States supreme Court opinion. *Lawrence v. Chater*, 516 U.S. at 179, 116 S.Ct. at 611, 133 L.Ed.2d at 562, dissenting opinion by Justice Scalia.

8. 28 U.S.C. § 2106.

9. *Lawrence v. Chater*, 516 U.S. at 168, 116 S.Ct. at 607, 133 L.Ed.2d at 555, citing *Heckler v. Lopez*, 463 U.S. 1328, 1330, 104 S.Ct. 10, 12, 77 L.Ed.2d 1431 (1983), explained:

  > (B)ecause GVR orders are premised on matters that we have reason to believe the court below did not fully consider, and because they require only further consideration, the standard that we apply in deciding whether to GVR is somewhat more liberal than the All Writs Act standard, under which relief is granted only upon a showing that a grant of certiorari and eventual reversal are probable....

10. The GVR order is appropriate where the United States Supreme Court is "uncertain, without undertaking a plenary analysis, of the legal impact of a new development ... which the lower court has had no opportunity to consider," *Lawrence v. Chater*, 516 U.S. at 174, 116 S.Ct. at 610, 133 L.Ed.2d at 559.

11. The virtues of the GVR practice include the conservation of Court resources, the flagging of issues that may not have been fully considered in the lower courts, and the assistance of the lower court's insight. *Lawrence v. Chater*, 516 U.S. at 167, 116 S.Ct. at 606, 133 L.Ed.2d at 554.

12. The GVR order may be a deferential alternative to summary reversal in cases that may not merit plenary review. *Id.*, *Lawrence v. Chater*, 516 U.S. at 168, 116 S.Ct. at 607, 133 L.Ed.2d at 555.

13. *Hoover*, 1998 OK 23 at ¶¶ 18–20, 957 P.2d at 88–89, Part V. This analysis in light of a congres-

homa Indian tribes in Oklahoma courts.[14] *Manufacturing* did not consider these early congressional acts. The *Hoover* opinion also reviewed subsequent federal law, including the Indian Reorganization Act of 1934,[15] the Oklahoma Indian Welfare Act of 1936,[16] and *Oklahoma Tax Commission v. United States*, 319 U.S. 598, 63 S.Ct. 1284, 87 L.Ed. 1612 (1943),[17] which were not considered in *Manufacturing*. The *Manufacturing* opinion does not change the congressional underpinnings of the *Hoover* opinion.

¶ 8 The tribal immunity doctrine enunciated in *Manufacturing* explicitly recognizes that an Indian tribe may consent to suit *ex contractu*. In the security agreement in this case, the Tribe agreed that Hoover's rights and remedies are governed by the UCC. In accordance with the UCC, Hoover brought this suit on the note and security agreement against the Tribe. Accordingly, today's outcome should be determined by the express terms of the parties' agreement.[18]

sional policy of assimilation is not novel. See, *Shaw v. Gibson–Zahniser Oil Corp.*, 276 U.S. 575, 48 S.Ct. 333, 72 L.Ed. 709 (1928), observing that the ultimate purpose of 1908 federal legislation was to give Indians independence from governmental control and hence, the status of responsible citizens and property owners; and determining that tax immunity would be inconsistent with the assumption of responsibility of citizenship.

**14.** *Hoover* considered: 1) 26 Stat. 81, the Oklahoma Organic Act of 1890 extending jurisdiction of the courts in Oklahoma Territory over Indian inhabitants, except controversies between members of the same tribe while sustaining tribal relations, 1998 OK 23 at ¶¶ 15–17, 957 P.2d at 86–88, Part IV; 2) 34 Stat. 137, dissolving the tribes and authorizing suit against the United States on behalf of the dependent Choctaw and Chickasaw tribes in the federal court in Indian Territory, 1998 OK 23 at ¶ 6, 957 P.2d at 84, n. 10; and, 3) 34 Stat. 267, the Oklahoma Enabling Act, together with 36 Stat. 1286, amending the Oklahoma Enabling Act, transferring causes in the territorial courts wherein the United States was a party to the federal courts in the State of Oklahoma, such as suits against Indian tribes in the name of the United States, and all other causes in the territorial courts to the Oklahoma state courts without regard to parties or subject matter. 1998 OK 23 at & & 21–25, 957 P.2d at 89–91, Part VI.

**15.** *Hoover*, 1998 OK 23 at ¶¶ 21–25, 957 P.2d at 92, n. 64, discussing 25 U.S.C. §§ 461, et seq. and its specific exclusion of Oklahoma Indian tribes therefrom.

**16.** *Hoover*, 1998 OK 23 at ¶ 28, 957 P.2d at 92, n. 65, reads:

The Oklahoma Indian Welfare Act, 49 Stat. 1967, codified at 25 U.S.C. §§ 501, et seq., provided that any federally recognized Indian tribe residing in Oklahoma could organize for its common welfare and adopt a constitution and by-laws. It authorized the Secretary of the Interior to issue a charter of incorporation to any such organized group, when ratified by a vote of the majority, which "may convey to the incorporated group, in addition to any powers which may properly be vested in a

body corporate under the laws of the State of Oklahoma, the right to participate in the revolving credit fund and to enjoy any other right or privilege secured to an organized Indian tribe." 25 U.S.C. § 503. It authorized ten or more Indians residing in close proximity to form an association for the purpose of credit administration, production, marketing, consumers' protection or land management, and "those matters not covered by the federal act, regulations or charters would be governed by the laws of Oklahoma." 25 U.S.C. § 504. And, it provided that an association could sue or be sued in any court, state or federal, in Oklahoma, having jurisdiction of the cause of action. 25 U.S.C. § 505.

**17.** *Hoover*, 1998 OK 23 at ¶ 29, 957 P.2d at 92–93. *Oklahoma Tax Commission v. United States* observed that Oklahoma Indian tribes had no effective tribal autonomy and retained only remnants of tribal sovereignty and noted that the Oklahoma Indian Welfare Act has made some progress in restoration of tribal governments. *Manufacturing* did not consider the Act. Nevertheless, if the Tribe's Business Committee is an association under § 504, then any cloak of immunity has been cast off and the Tribe has the status of a private commercial enterprise. This is so because of the sue-and-be-sued language in § 505. *Loeffler v. Frank*, 486 U.S. 549, 556, 108 S.Ct. 1965, 1970, 100 L.Ed.2d 549 (1988). Sue-and-be-sued language is liberally construed to include the natural and appropriate incidents of legal proceedings. *Id.*, 486 U.S. at 555, 108 S.Ct. at 1969.

**18.** In my dissent to *Carl E. Gungoll Exploration Joint Venture v. The Kiowa Tribe of Oklahoma*, 1998 OK 128, 975 P.2d 442, I urged that the cause be remanded so the court of first instance could assign meaning to the contract provisions. However, because the meaning of language in a contract is a matter of law, *Lewis v. Sac and Fox Tribe of Oklahoma*, 1994 OK 20, 896 P.2d 503, cert. denied,516 U.S. 975, 116 S.Ct. 476, 133 L.Ed.2d 405, this Court should now assign meaning to the contracts sued upon herein. To do so on this remand from the United States Supreme Court would be judicially efficient and appropri-

¶ 9 The majority opinion is correct that Hoover's contract claims arose out of the Tribe's Business Committee's agreements to buy stock issued by Clinton–Sherman Aviation, Inc., **nearly identical** to the facts surrounding the contract claim in *Manufacturing*. The contract claims, however, are not identical. Manufacturing Technologies' claim is based on a single document, a promissory note,[19] whereas Hoover's claim is based on two documents, a promissory note and a security agreement. The security agreement presents a legally significant evidentiary difference between this case and *Manufacturing*.

¶ 10 To avoid the legal force of the security agreement, the majority opinion takes the position that this suit is based only upon the promissory note.[20] This position is contrary to contract rules that the agreement of the parties is to be determined as expressed in all writings contemporaneously executed as part of the transaction;[21] and that the agreement should be read as a whole so as to give effect to all the provisions and render them consistent with each other.[22] These cardinal rules of contract law govern this case. On April 3, 1990, the Tribe executed a promissory note and a security agreement contemporaneously as part of the same transaction with Hoover and the intended bargain between the parties should be determined as expressed in both documents.[23]

¶ 11 Our *Hoover* opinion noted that: 1) the promissory note and the security agreement included a clause which provided "that nothing 'subjects or limits the sovereign rights of the Kiowa Tribe of Oklahoma'"[24]; and, 2) the security agreement also included a clause which expressly provided, "in part VII. Remedies, that the 'Lender may ... exercise any and all rights and remedies provided in the Uniform Commercial Code of the state which the Lender is located....'"[25] The sovereign-rights clause expresses an intent to preserve the Tribe's power of self-governance. This is so because attributes of tribal sovereignty relate to the rights necessary for self-government and ter-

ate under extant federal jurisprudence recognizing that states regulate contracts, *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 843, 130 L.Ed.2d 753 (1995), and that the interpretation of contracts is ordinarily a question of state law. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 474, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989).

19. The facts are set forth in part I of the *Manufacturing* opinion, 523 U.S. 751, 118 S.Ct. at 1702, 140 L.Ed.2d 981:

In 1990, a tribal entity called the Kiowa Industrial Development Commission agreed to buy from respondent Manufacturing Technologies certain stock issued by Clinton–Sherman Aviation, Inc. On April 3, 1990, the then-Chairman of the Tribe's Business Committee signed a promissory note in the name of the Tribe.... The note does not specify a governing law. In a paragraph entitled "Waivers and Governing Law" it does provide: "Nothing in this Note subjects or limits the sovereign rights of the Kiowa Tribe of Oklahoma." App.14.

The Tribe defaulted; respondent sued on the note in state court; and the Tribe moved to dismiss for lack of jurisdiction, relying in part on its sovereign immunity from suit.... (Emphasis added.)

20. The majority opinion at n.1.

21. *United States v. Winstar Corporation*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

*Sunrizon Homes, Inc. v. American Guaranty Investment Corp.*, 1988 OK 145, 782 P.2d 103.

22. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63–64, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995); *Pierce Couch Hendrickson Baysinger & Green v. Freede*, 1997 OK 33, 936 P.2d 906; and 15 O.S.1991, § 157.

23. Other applicable rules of contract construction are that the intent of the parties at the time they entered into the agreement controls the meaning of the written contract; intent is to be gathered from the entire instrument; the clear and explicit language evidences what the parties intended; absent illegality parties are free to bargain as they see fit; and,when the bargained-for agreement is in writing, a court may neither make a new contract to benefit a party nor rewrite the existing one. *Founders Bank and Trust Co. v. Upsher*, 1992 OK 35, 830 P.2d 1355.

24. *Hoover*, 1998 OK 23 at ¶ 8, 957 P.2d at 84, n. 11. The sovereign-rights clause in Hoover's promissory note and security agreement is the same as the sovereign-rights clause in Manufacturing Technologies' promissory note. The *Manufacturing* Court observed that the sovereign-rights clause was in a paragraph entitled "Waivers and Governing Law" but no governing law was specified. See n.18, infra.

25. *Hoover*, 1998 OK 23 at ¶ 8, 957 P.2d at 84, n. 11.

ritorial management.[26] The remedies clause, on the other hand, expresses an intent that the agreement may be judicially enforced under Oklahoma's UCC. This is so because Oklahoma's UCC provides that "(w)hen a debtor is in default under a security agreement, a secured party ... may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure."[27]

¶ 12   The provisions of the sovereign-rights clause and the remedies clause do not facially clash to create ambiguity.  Any latent ambiguity created by an assumption that immunity from suit is an attribute of tribal sovereignty cannot be resolved to negate the solemn promise expressed in the remedies clause.  This is so because no sovereign power is limited by the tribe's agreement to pay a debt and to be sued for damages upon failure to pay the debt.[28]  The remedies clause in the security agreement is a clear expression that upon default the Tribe may be sued as specified in the UCC. It is conducive to no other reading.  From a most generous reading of the remedies clause together with the sovereign-rights clause, intent can be gleaned that the Tribe agreed that its contract with Hoover may be enforced under the UCC without limiting its right to immunity from suit under some other law.

¶ 13   The federal law tribal immunity doctrine explicitly recognizes that an Indian tribe may waive its immunity to suit and no federal law prohibits an Indian tribe from contractually agreeing to a limited waiver of its immunity from suit.[29]   The remedies clause clearly expresses the Tribe's consent to suit as provided in the UCC. The promissory note and security agreement herein, executed on behalf of the Tribe, proscribe relief under *Manufacturing* and this Court should so hold.

¶ 14   The analysis of federal law in *Hoover* is not contrary to the *Manufacturing* opinion and there is no principled reason to overrule our *Hoover* opinion.   The Tribe agreed to be sued under the Oklahoma Uniform Commercial Code and it is not entitled to relief under *Manufacturing*.  Accordingly, we should leave standing our duly mandated *Hoover* opinion and, in a supplemental opinion on this GVR remand, we should affirm the district court judgment in favor of Hoover.

**26.**  *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 137, 102 S.Ct. 894, 901, 71 L.Ed.2d 21. Rights attributable to tribal sovereignty are generally determined on a case-by-case basis.  *Puyallup Tribe, Inc. v. Department of Game of Washington*, 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977), considered whether a tribe had sovereign right to regulate tribal fishing; and, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106, considered whether the tribe had a sovereign right to determine its membership contrary to constitutional equal protection safeguards.

**27.**  Oklahoma's UCC, 12 O.S.1981, § 9–501, recodified at 12 O.S.1991, § 9–501,

**28.**  *United States v. Winstar Corporation*, 116 S.Ct. at 2457.

**29.**  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. at 60, 115 S.Ct. at 1212, recognizing that parties may contract to limit the application of strong congressional policy; and, *Port*

*Authority Trans–Hudson Corporation v. Feeney*, 495 U.S. 299, 307, 110 S.Ct. 1868, 1874, 109 L.Ed.2d 264 (1990), recognizing a waiver of Eleventh Amendment immunity when the overwhelming statutory implication leaves no room for any other reasonable construction and concluding that a venue statute qualified the more general statute.  Here, the overwhelming implication is that the more specific UCC remedies clause limits the scope of the general preservation of sovereign rights.  Further, the remedies clause is an unequivocal expression that the Tribe's contracts may be judicially enforced under the federal law's high standard that a waiver of the federal government's sovereign immunity must be unequivocally expressed and the scope of the waiver must be strictly construed in favor of the sovereign.   *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 119 S.Ct. 687, 691, 142 L.Ed.2d 718 (1999).  Also, *Library of Congress v. Shaw*, 478 U.S. 310, 319, 106 S.Ct. 2957, 2964, 92 L.Ed.2d 250 (1986), strictly confining the scope of statutory language that the United States shall be liable "the same as a private person."