**Ulester RUCKER, Geraldine Rucker, individually, and as parents of Angela Rucker, Appellants,**

v.

**MID CENTURY INSURANCE COMPANY, Appellee.**

No. 87328.

Court of Civil Appeals of Oklahoma, Division No. 2.

July 8, 1997.

Randy L. Goodman, Midwest City, for Appellants.

Linda Alexander, Harris A. Phillips, Niemeyer Alexander Austin & Phillips, Oklahoma City, for Appellee.

*MEMORANDUM OPINION*

BOUDREAU, Judge.

Plaintiffs Ulester Rucker and Geraldine Rucker, individually and as parents of Angela Rucker, appeal a judgment on a jury verdict in favor of Defendant Mid Century Insurance Company. In this action for bad faith breach of contract, the primary issues on appeal are twofold: (1) did Defendant violate the mandate of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by excluding the only two black veniremen in the jury pool, and (2) did Defendant violate the "collateral source rule" in inquiring about payments received by Plaintiffs under their health care insurance policy and from other sources. We answer both questions in the negative and affirm the judgment on the jury verdict.

Plaintiffs were involved in an automobile accident. They sued Defendant, their insurer, alleging that it violated a duty of fairness and good faith owed to them. Specifically, Plaintiffs contended that Defendant wrongfully withheld monies due under their insurance contract. They also alleged that Defendant required them to acknowledge partial fault for the accident in controversy and sign an instrument releasing the other driver.

The matter was tried to a jury. The jury rendered a verdict for Defendant. Plaintiffs appeal from this jury verdict.

I

*BATSON* CHALLENGE

*Standard of Review*

■ Plaintiffs contend that Defendant violated the mandate of *Batson* by excluding the only two black veniremen in the jury pool. A trial court's determination that the exercise of peremptory challenges was not based on intentional discrimination on the basis of race will be upheld on appeal unless it was clearly erroneous. *Hernandez v. New York*, 500 U.S. 352, 364–66, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991).

*Analysis*

In *Batson*, the Supreme Court significantly limited the previously, largely unfettered use of peremptory strikes in criminal cases. The Court determined that the equal protection clause limits a state prosecutor's ability to peremptorily strike a panelist on grounds that the panelist is a member of a defendant's racial group. *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719. The Court held that, to make out a prima facie *Batson* challenge, a criminal defendant must show that he is member of a racial group [1], that the members of that group have been excluded from his jury, and that the facts and circumstances of the case raise an inference that exclusion was based on race. *Id.* at 93–94, 106 S.Ct. at 1721. In *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Supreme Court later extended the prohibitions of *Batson* to civil cases holding that a private party in a civil case may not use peremptory challenges to exclude jurors on account of race.

■ The party that raises a *Batson* challenge bears the ultimate burden of proof of demonstrating the "existence of purposeful discrimination." *Batson*, 476 U.S. at 93, 106 S.Ct. at 1721. In determining whether an opponent of a peremptory challenge has met this burden, *Batson* requires a three-step analysis. *Purkett v. Elem*, 514 U.S. 765, 766–67, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995). Initially, the opponent must make out a prima facie case of racial discrimination.[2] *Batson*, 476 U.S. at 94, 106 S.Ct. at 1721. If the opponent makes the requisite showing, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation for the challenge. *Id.* This second step does not require an explanation that is persuasive or even plausible, just one that is race-neutral.

---

**1.** In *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court eliminated the racial identity requirement. It held that a defendant has standing to object to the race-based exclusion of jurors on equal protection grounds under *Batson*, even if the defendant is not of the same race as the challenged jurors.

**2.** The Supreme Court later extended *Batson* to gender in the case of *J.E.B. v. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

*Elem,* 514 U.S. at 767–69, 115 S.Ct. at 1771. The reason given will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. *Id.*

If a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. *Id.* It is not until this third step that the persuasiveness of the explanation becomes relevant. *Id.* At this stage, the trial court can consider whether the explanation provides a plausible basis for believing that "the person's ability to perform his or her duties as juror" will be affected or whether the explanations are merely implausible and fantastic justifications that are pretexts for purposeful discrimination. *Id.* (citation omitted).

■ Although the burden of going forward under *Batson* may shift, the ultimate burden of persuasion of showing purposeful discrimination always remains with the person raising the *Batson* challenge. *Id.*

■ In this case, Plaintiffs made out a prima facie case of racial discrimination when they demonstrated to the court that Defendant had used its peremptory challenges to strike the only two blacks from the jury panel. In response, Defendant's attorney offered the following explanations—that he struck Mr. Wilson, a truck driver, because he had a previous claim against an insurance company, and that he struck Ms. Jennings because he had mispronounced her name during voir dire, she had corrected him, and he had no other concerns about the remaining veniremen. Both of these reasons are race-neutral and satisfy Defendant's burden of articulating a nondiscriminatory reason for the strikes.

The inquiry, thus, properly proceeded to the third step, where the trial judge refused to take any remedial action. In refusing to do so, the judge implicitly determined that Plaintiffs had failed to prove that the defense attorney was motivated by discriminatory intent in the exercise of his peremptory challenges. We do not find this determination to be clearly erroneous and accordingly uphold it on appeal.

## II

## COLLATERAL SOURCE

### Standard of Review

■ Plaintiffs contend that Defendant's attorney violated the "collateral source rule" by continually inquiring, over objection, about whether certain medical bills were paid under Plaintiffs' health care insurance policy or from other sources. The decision to admit evidence is addressed to the sound discretion of the trial court and will not be disturbed absent a showing of a clear abuse of discretion. *Edwards v. Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc.,* 1982 OK 72, 650 P.2d 857, 863.

### Analysis

■ In Oklahoma, a wrongdoer who commits a tort is liable for the whole loss caused by his actions, and any compensation received by the injured party from a collateral source, wholly independent of the wrongdoer, will not lessen the damages recoverable from the wrongdoer. *Denco Bus Lines, Inc. v. Hargis,* 204 Okla. 339, 343, 229 P.2d 560, 564 (1951). Plaintiffs contend that the trial court erred when it received evidence of payments from other sources because such evidence has no relevance to the issue of damages recoverable.

■ We agree with Plaintiffs that normally payments of collateral benefits have no relevance and should remain unknown to the jury in weighing damages because of the danger of their prejudicial effect. However, under the unique circumstances of this case, we do not find that the trial court erred in receiving such evidence.

■ First, a review of the trial transcript indicates that much of the testimony which Plaintiffs seek to exclude was received into evidence without objection. 12 O.S.1991 § 2104 provides:

A. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, and:

1. If the ruling is one admitting evidence, a timely objection or motion to

strike appears of record, stating the specific ground of objection, if the specific ground is not apparent from the context. . . .

To the extent that Plaintiffs failed to object to the testimony in a timely manner, they waived any objection.

 Second, Plaintiff Geraldine Rucker testified on direct examination that Defendant's failure to pay the bills led to considerable family stress and aggravation and, along with the accident, almost caused the couple to divorce. On cross-examination, in an answer that was not responsive to the question asked, she also suggested that the family was getting calls from bill collectors during meals. Because Plaintiff introduced *affirmative evidence* on how Defendant's failure to pay the medical bills exacerbated family stress, the trial judge allowed Defendant a limited inquiry on cross-examination to show that these bills had, in fact, been paid from other sources.

The trial judge apparently concluded that Defendant was not required to leave Plaintiffs' assertions in this regard unchallenged. We cannot say that the trial judge abused his discretion. *See Gladden v. P. Henderson & Co.*, 385 F.2d 480, 484 (3d Cir.1967) ("[T]he collateral benefit rule cannot be made a springboard from which a plaintiff may go forward with affirmative evidence that he returned to work while he was still ailing, because of financial need and then seek immunity from cross-examination regarding it.").

### III

### JURY VERDICT

 Plaintiffs also contend that the verdict was against the weight of the evidence. A jury verdict will be upheld against the allegation that it is unsupported by the evidence, if there is any evidence which, if believed by the jury, is sufficient to support the verdict. *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*, 1992 OK 43, 841 P.2d 568, 570;

*Holley v. Shepard*, 1987 OK 92, 744 P.2d 945, 947.

The thrust of Plaintiffs' complaints against Defendant centers around the asserted failure of Defendant to use good faith and fair dealing in its conduct vis a vis Plaintiffs, its insureds. We have thoroughly reviewed the transcript of the trial. It contains sufficient evidence to support the jury's verdict in favor of Defendant.[3]

AFFIRMED.

STUBBLEFIELD, P.J., and RAPP, J., concur.

---

3. Plaintiffs contend that the verdict was not supported by the evidence because a single $32 medical bill remains unpaid. We disagree. Even if we concluded that this was sufficient to overturn the verdict, the testimony relating to the bill was so ambiguous that the jury could have inferred that it had, in fact, been paid.