66 P.3d 462 (2002)
2003 OK CIV APP 22
In the Matter of S.D., an alleged deprived child.
State of Oklahoma, Appellee,
v.
Cassandra Kinnamon, Appellant.
No. 96,743.
Court of Civil Appeals of Oklahoma, Division No. 1.
October 25, 2002.
Certiorari Denied February 19, 2003.
*463 Bryan N.B. King, Fellers, Snider, Blankenship, Bailey & Tippens, P.C., and Bill McKinney, Office of Oklahoma County Public Defender, Oklahoma City, OK, for S.D.
Mary Smith, Assistant District Attorney, District 7, Oklahoma City, OK, for Appellee, State of Oklahoma.
Jim Pearson, Oklahoma City, OK, for Appellant.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 1.
KENNETH L. BUETTNER, Judge:
¶ 1 The State of Oklahoma filed a petition to terminate the parental rights of Cassandra Kinnamon (Mother) in her daughter, S.D., alleging that Mother had intentionally administered an overdose of medication to S.D. Mother moved in limine to prevent State from using any evidence concerning allegedly bad acts with respect to her older child which occurred approximately eight years prior to the current action. She also requested that the court exclude evidence relating to her mental condition. The trial court allowed discovery of Mother's psychiatric condition and treatment, stating that the psychotherapist-patient privilege does not protect those records or information from discovery. At trial, evidence of prior acts relating to the older child, compelled testimony from Mother's psychologist, and Mother's psychological records were introduced over Mother's objection. The jury returned a verdict terminating Mother's parental rights in S.D. We affirm.
¶ 2 Mother contends that the trial court erred in allowing discovery of her mental health records and the admission at trial of her mental health records and testimony concerning her mental health; in permitting the video testimony of her child; in admitting testimony about prior bad acts with respect to her older daughter in 1992 and, in relation thereto, incorrectly applying 12 O.S.1991 *464 § 2404 (character evidence not admissible to prove conduct); and finally, in refusing to give a limiting instruction about prior bad acts.
¶ 3 It is undisputed that S.D. overdosed on Mellaril, a medication the child had not taken for some months, that Mother and stepfather took the child to Mercy Hospital about midnight where the emergency room physician noted her symptoms (drowsiness) and gave the child a charcoal slurry which kept the medicine from being absorbed by the body. The emergency room doctor did not make a report of suspected child abuse. Stabilized, the child was transferred to Integris (Baptist) Hospital and was released by her treating physician later that day. The treating doctor did not make a report of suspected child abuse.[1]
¶ 4 Mother claims that the trial court erred in ordering discovery of her psychological records and in admitting testimony about her psychological condition and therapeutic records over her objection on the ground of privilege. The question whether a court may order discovery or admit evidence in a parental rights termination hearing, which otherwise would be protected by privilege, has not been answered in Oklahoma. Title 12 O.S. 1991 § 2503 states:
A. As used in this section:
1. A "patient" is a person who consults or is examined or interviewed by a physician or psychotherapist;
2. A "physician" is a person authorized to practice medicine in any state or nation, or reasonably believed by the patient to be so authorized;
3. A "psychotherapist" is:
a. a person authorized to practice medicine in any state or nation, or reasonably believed by the patient to be so authorized, while engaged in the diagnosis or treatment of a mental or emotional condition, including alcohol or drug addiction, or
b. a person licensed or certified as a psychologist under the laws of any state or nation, or reasonably believed by the patient to be so licensed or certified, while similarly engaged; and
4. A communication is "confidential" if not intended to be disclosed to third person, except persons present to further the interest of the patient in the consultation, examination or interview, persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family.
B. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.
C. The privilege may be claimed by the patient, his guardian or conservator or the personal representative of a deceased patient. The person who was the physician or psychotherapist at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the patient.
D. The following shall be exceptions to a claim of privilege:
1. There is no privilege under this section for communications relevant to an issue in proceedings to hospitalize the patient for mental illness, if the psychotherapist in the course of diagnosis or treatment has determined that the patient is in need of hospitalization;
2. Communications made in the course of a court ordered examination of the physical, mental or emotional condition of a patient, whether a party or a witness, are not privileged under this section *465 when they relate to the particular purpose for which the examination is ordered unless the court orders otherwise; or
3. The privilege under this Code as to a communication relevant to the physical, mental or emotional condition of the patient in any proceeding in which the patient relies upon that condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense, is qualified to the extent that an adverse party in said proceeding may obtain relevant information regarding said condition by statutory discovery.
Thus, § 2503 provides a privilege against disclosure of confidential communications made for the purpose of treating a mental condition. The § 2503(D) exceptions do not appear to apply here: 1) this was not a proceeding to hospitalize Mother for mental illness; 2) the records and testimony involved were not the result of court-ordered evaluation, and, 3) Mother did not place her mental status at issue through claim or defense. In this regard, the court record does not contain any responsive pleading by Mother, and at trial, she claimed S.D. got the medicine bottle and took the medicine without Mother's knowledge. Thus, § 2503 applied to the information sought from Mother, and none of the exceptions in § 2503(D) apply. The question then is whether there is any other basis for requiring disclosure of Mother's mental health records.
¶ 5 The State argues that the otherwise privileged evidence was discoverable as well as admissible by reading together two statutes. First, it claims that the expressed intention of the legislature in the Oklahoma Child Abuse Reporting and Prevention Act (the Act), 10 O.S. Supp.1995 § 7101 et seq., that in responding to reports of child abuse or neglect that the "best of interests of the child shall be of paramount consideration," limits the privilege. 10 O.S. Supp.1995 § 7102.
¶ 6 It then cites § 7103 of the Act which states that every person who believes that a child is the victim of abuse or neglect must report the incident to the Department of Human Services and that no privilege relieves the person of this requirement.[2]
¶ 7 Then, pursuant to 10 O.S. Supp.1995 § 7106, DHS is required to initiate an investigation of reported child abuse or neglect. The statute specifically states that the investigation may include access to the mental health records of a parent if DHS has reason to believe that the parent has a history of mental illness. If such a parent does not voluntarily allow DHS access to those records, the district attorney may apply to the court, who shall, upon good cause shown, order access to the records pursuant to terms and conditions prescribed by the court.[3] Finally, the State cites § 7113 which provides that "such report, contents, or other fact related thereto ... shall not be excluded on the ground that the matter is or may be the subject of a physician-patient privilege or similar privilege or rule against disclosure."
¶ 8 In the instant case, it is undisputed Father called DHS to report the suspected *466 abuse. Father made the call after Mother told him that she had given the medicine to S.D. Father also advised of Mother's attempted suicides and an overdose involving an older daughter. As a result of the report, DHS conducted an investigation, determined that Mother might have a mental illness, and sought her mental health records. The trial court granted disclosure.[4] Under these facts, we hold that the legislature has abrogated the § 2503 psychotherapist privilege. Section 7113 states:
In any proceeding resulting from a report made pursuant to the provisions of the Oklahoma Child Abuse Report and Prevention Act or in any proceeding where such a report or any contents of the report are sought to be introduced into evidence, such report, contents, or other fact related thereto or to the condition of the child or victim who is the subject of the report shall not be excluded on the ground that the matter is or may be the subject of a physician-patient privilege or similar privilege or rule against disclosure.
¶ 9 We find support for this position in cases from other states. The North Dakota Supreme Court held that a similar child abuse reporting act abrogated privileged communications in child abuse cases. Interest of R.O., 631 N.W.2d 159, 163 (N.D.2001). Likewise, the Minnesota Supreme Court has said:
Information which is sheltered by the statutory medical privilege loses its privileged status to the extent its disclosure is authorized by the Child Abuse Reporting Act.
State v. Odenbrett, 349 N.W.2d 265, 268 (Minn.1984).
¶ 10 While the parameters of the abrogation in each state may differ, the concept of abrogation is the same. One must then look to the specific language of the Child Abuse Reporting Act to determine to what extent the privilege is abrogated. In Oklahoma, where an authorized report leads to an investigation which leads to the court authorizing access to mental health records pursuant to § 7106(C)(3), then, at least to the extent of the access granted, the privilege is abrogated. Likewise, where the privilege as to mental health records is abrogated, the psychologist/psychiatrist generating those records may be compelled to testify pursuant to terms and conditions prescribed by the court pursuant to § 7106(C)(3).
¶ 11 Mother also contends that the trial court erred in admitting the child's video testimony at trial. She does not argue that the court used the incorrect procedure, but claims the child's statements did not provide a sufficient indicia of reliability. She bases this argument on the fact that at the § 2803.1 hearing, the court did not determine whether the child had personal knowledge of the crime.[5] The court's statutory direction, however, allows it discretion in determining the reliability of the minor's statement. There is no error on this account.
¶ 12 Mother's next two allegations of error concern 12 O.S.1991 § 2404, "Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes." She claims that some of the evidence was too remote, including evidence of 1992 incidences with S.D.'s older sister and that the evidence of the events which happened to the sister were not similar enough to the alleged overdosing of S.D. She objected at trial, but the *467 court overruled her objections. Section 2404(B) states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
The prior bad acts to which Mother objected occurred in 1992. The older sister was admitted to a hospital because of an overdose of Tylenol. There was also testimony that Mother tried to smother the older daughter. The petition alleging S.D., the younger daughter, was deprived was filed May 15, 2000. Although the evidence could not be admitted to show Mother had the character of a person who attempts to injure her children, and therefore attempted to injure S.D., it was admissible and relevant for other reasons, such as absence of mistake or accident. The trial court did not abuse its discretion in admitting the evidence.
¶ 13 Finally, Mother argues that the trial court erred in refusing to give a limiting instruction with respect to the testimony concerning the prior bad acts. She cites the Oklahoma Uniform Jury InstructionCriminal 9.9 to support her complaint. Mother does not cite any authority that a limiting instruction is required in termination proceedings. In any event, unless an instruction, or instructions taken as a whole, mislead a jury, there is no reversible error in faulty instructions so long as the verdict rests on competent evidence. Missouri-Kansas-Texas Railroad Company v. Harper, 1970 OK 77, 468 P.2d 1014. We are convinced that did not occur here.
¶ 14 For the reasons expressed, we AFFIRM.
JOPLIN, V.C.J., and JONES, J., concur.
NOTES
[1] See 10 O.S. Supp.1995 § 1073 which requires health care workers attending a child, who suspect the child is abused, to report to DHS. Privilege does not relieve the health care worker of the requirement. See n. 2 supra.
[2] 10 O.S. Supp.1995 § 1073, provides, in part:

A. 1. Every:
a. physician or surgeon, including doctors of medicine and dentistry, licensed osteopathic physicians, residents and interns, examining, attending or treating a child under the age of eighteen (18) years,
b. registered nurse examining, attending or treating such a child in the absence of a physician or surgeon,
c. teacher of any child under the age of eighteen (18) years, and
d. other person,
having reason to believe that a child under the age of eighteen (18) years is a victim of abuse or neglect, shall report the matter promptly to the Department of Human Services. Such reports may be made by telephone, in writing, personally or by any other method prescribed by the Department. Any report of abuse or neglect made pursuant to this section shall be made in good faith.
* * *
3. No privilege or contract shall relieve any person from the requirement of reporting pursuant to this section.
[3] Section 7106(4) also provides for notice and hearing whenever DHS seeks access to mental health records and states that access to mental health records does not constitute a waiver of confidentiality.
[4] The therapist testified to his treatment of Mother. She was afraid she may have hurt her child, although she later described the incident as an accident. Mother was diagnosed with generalized anxiety syndrome. She had a history of childhood abuse, and her mother and step-father had a history of mental illness. The therapist did not think Mother was a danger to her children. The medical record from 1993 described a variety of mental problems including homicidal ideations relating to Mother's 19 month old daughter.
[5] 12 O.S. Supp.2000 § 2803.1(A)(1), provides in part: The court finds, in a hearing conducted outside the presence of the jury, that the time, content and totality of circumstances surrounding the taking of the statement provide sufficient indicia of reliability so as to render it inherently trustworthy. In determining such trustworthiness, the court may consider, among other things, the following factors: the spontaneity and consistent repetition of the statement, the mental state of the declarant, whether the terminology used is unexpected of a child of similar age or of an incapacitated person, and whether a lack of motive to fabricate exists.