2004 OK CIV APP 43

Woodie and Mary KIMBLE, husband and wife, Plaintiffs/Appellees/Counter–Appellants,

v.

John ARNEY, individually; and Arney & Milspaugh, a partnership, Defendants/Appellants/Counter–Appellees.

No. 99,266.

Court of Civil Appeals of Oklahoma, Division No. 4.

April 27, 2004.

W. Brett Willis, Calvert Law Firm, Oklahoma City, OK, Stephen D. Beam, Weatherford, OK, for Plaintiffs/Appellees.

John B. Hayes, Hayes, Magrini & Gatewood, Oklahoma City, OK, for Defendants/Appellants.

Opinion by RONALD J. STUBBLEFIELD, Trial Judge:

¶ 1 This is an appeal and counter-appeal from judgment entered on jury verdict in a multi-theory action against an attorney and his law partnership for damages. The defendant attorney and his firm appeal the money judgment on jury verdict, which was reduced on remittitur by the Trial Court. Plaintiffs counter-appeal the remittitur and, in the event of a possible reversal and remand by this Court, appeal the Trial Court's dismissal at trial of certain of their causes/theories of recovery. Based on our review of the record on appeal and applicable law, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Plaintiffs Woodie and Mary Kimble were neighbors and friends of Louise Ayres. They had a close relationship, and after Ayres was widowed she spent considerable time in the Kimble home. Evidence would establish that Ayres came to think of the Kimbles as her "kids." In March 1995, Ayres asked Mr. Kimble to serve as her attorney in fact and to make an appointment with local attorney John Arney to draft the papers and to discuss her will. Arney had drafted several wills for Ayres and her husband, as well as for the Kimbles, and every will drafted by Arney for Ayres had included a provision for the Kimbles. Also included in provisions of prior wills was Ayres' nephew, Joe Fred Lohrengel.

¶ 3 Mr. Kimble made the appointment, and Ayres and the Kimbles went to Arney's office, where he practiced law in the partnership of Arney & Milspaugh. Testimony would establish that during this meeting Ayres was dressed neatly, acted alertly and seemed in control of the discussion. Ayres informed Arney that she wished to make Woodie Kimble her attorney-in-fact, and also wanted to review her prior will which had been executed in 1992. The 1992 will left the bulk of Ayres' estate to Lohrengel. Upon review of the will with Arney, Ayres indicated her desire to change the instrument to leave 100% of the residuary estate, which contained a substantial sum of money, to the Kimbles rather than Lohrengel. However, Arney urged her to leave 25% of the residuary estate to Lohrengel, and Ayres agreed.

¶ 4 Sometime later in March 1995, Ayres and the Kimbles returned to Arney's office and Arney led Ayres through the procedure of executing the power of attorney and the will. However, Arney told Ayres and the Kimbles that, because he had only one secretary in the office, Karen Muno, who would have to witness the will along with Arney, he could not have the will notarized at that time. He supposedly told the Kimbles that Ayres did not need to return but that one of them could pick up a copy of the will in a couple of days.

¶ 5 What happened next is in substantial dispute. Mrs. Kimble would testify that she returned to Arney's office two days later and Arney handed her the will, making the statement: "I didn't notarize it because I don't want all the nieces and nephews in here throwing a fit whenever something happens to her."

¶ 6 John Arney's testimony would be substantially different. He agreed that Ayres had appeared competent and mentally alert at the execution, and that the execution procedure went smoothly except that he had not been able to notarize the will because his only available notary was his secretary and she had to act as a witness. However, he claimed that he had stated that Ayres was supposed to return in two days to complete the self-proving provision in the will. He also claimed that as Ayres left his office she made a statement to him that gave him "second thoughts." He claimed she said: "I do not know why we are doing this. All I got is that little old house up there." Arney knew that besides the house, Ayres had approximately $600,000 in cash assets received by inheritance. He testified that he thought he may have misjudged Ayres' capacity, and that approximately two days later he told his secretary, Karen Muno, about the statement. However, he admits that he never told anyone except Muno about the statement, and he did nothing further in regard to the 1995 will. Arney additionally testified that neither Ayres nor the Kimbles ever returned to pick up the executed will. The Kimbles would testify that Ayres never made such a statement as Arney claimed.

¶ 7 Later, Ayres loaned the Kimbles $195,000 to pay off a livestock loan which had been called by their bank. Lohrengel heard of the loan, and wanted to recover the money for Ayres or her estate, and he contacted John Arney and asked him to file a guardianship proceeding against Ayres. Arney agreed, and he represented Lohrengel in an action in which Lohrengel was appointed Ayres' guardian. Acting in that capacity, he sued the Kimbles to recover the $195,000.

¶ 8 Ayres passed away in 1998. Again Lohrengel hired Arney, this time to probate the 1992 will, which left Lohrengel the entire residual estate with an approximate value of $600,000. Arney, on behalf of Lohrengel, offered the 1992 will for probate, and the Kimbles offered the 1995 will. The probate court ruled that the 1995 will was not executed according to law and denied its admission, instead admitting the 1992 will as the valid last will and testament of Ayres. The Kim-

bles then brought this lawsuit for damages against Arney and his firm (hereinafter collectively referred to as Arney), stating causes of action for malpractice (negligence), fraud/deceit, breach of contract and breach of fiduciary duty.

¶ 9 Arney generally denied the allegations, claiming that (1) any defect in the will, or any controversy regarding its admissibility would have been cured if Ayres had returned to his office to execute the self-proving provision of the instrument; and (2) the 1995 will would have been accepted for probate if the proponents and their counsel had asked the proper questions at the hearing on the will, because Arney would have testified that all the statutory procedural requirements were followed at the time of the will's execution.

¶ 10 The case proceeded to jury trial, resulting in a verdict in favor of the Kimbles against Arney in the amount of $435,640.95. However, while the Trial Court denied Arney's motion for new trial and motion for judgment notwithstanding the jury verdict, it sustained Arney's motion for remission/remittitur, reducing the judgment to $279,090.13 or alternatively ordering a new trial. The Kimbles accepted the remittitur. Arney appeals and the Kimbles counter-appeal.

## DISCUSSION OF ISSUES

### I. Appeal of Arney

¶ 11 Arney states five propositions of error, which are all phrased as questions. We summarize these as contentions that the Kimbles did not meet their burden of proof, and that the Trial Court committed reversible error in admitting or refusing evidence and in instructing the jury.

### A. The Sufficiency of the Evidence

¶ 12 The case was submitted to the jury only on the theories of attorney negligence and breach of contract. However, the unanimous jury verdict is on a general verdict form, which does not detail any basis for the jury's determination of liability or amount of damages. Thus, the challenge to the sufficiency of the evidence requires this Court to determine if the evidence supports either

theory of recovery and the amount of damages as modified by remittitur by the Trial Court. We conclude the evidence supports the claim of attorney negligence.

## B. Negligence

■ ¶ 13 The plaintiff in a negligence action against an attorney must prove the existence of an attorney-client relationship, a breach of the attorney's duty to the client, and a causal nexus between the attorney's negligence and resulting injury. *Worsham v. Nix,* 2004 OK CIV APP 2, ¶ 6, 83 P.3d 879, 883. The existence of an attorney-client relationship is not disputed in this case. The dispute is primarily over whether the Kimbles demonstrated a breach of duty by Arney.

¶ 14 Arney claims that the reason the 1995 will was not accepted for probate was not because of any legal negligence on his part, but because at the hearing on admission of the will counsel for the Kimbles never asked the right questions of the two subscribing witnesses. He claims they never asked him whether the will was executed according to statutory requirements (*see* 84 O.S.2001 § 55) and, if they had asked, he would have testified that it was. However, the findings of fact entered by the probate court, which were admitted into evidence in this negligence trial, indicate that the will was denied admission into probate because of defects in the execution. The probate court found:

1. The testimony of Karen Muno, a subscribing witness to the March 31, 1995, will reveals that:

 a) She cannot recall if John Arney, the other subscribing witness and the attorney who prepared the will, asked the testator any questions concerning the testator's intentions and desires about the will; and

 b) the testator gave no direct statements nor asked any questions during the execution of the will.

2. The testimony of John Arney, the other subscribing witness and the attorney who prepared the testator's March 31, 1995, will, did not reveal that the testator ever clearly conveyed, in a way that rea-

sonable minds would not differ, her thoughts and intentions about this will. Certainly, there was evidence at trial in this case that the will was not executed according to law.

¶ 15 Expert testimony was given regarding the legal requirements for execution of a will, and one requirement was that the will must be signed in the presence of the subscribing witnesses. However, subscribing witness, Karen Muno, Arney's secretary of nineteen years, testified that the will was not executed by Ayres in the presence of Arney and herself, and that the document was not even witnessed in the presence of Ayres. Muno also testified that at the urging of Arney and his counsel she had signed an affidavit to be used in the case which stated that the will had been properly executed and witnessed, but that she knew it was wrong.

¶ 16 In addition, Arney testified about his long-term acquaintance with Lohrengel, and also testified that, after drafting the 1995 will, he chose to represent Lohrengel in seeking a guardianship for Ayres and in presenting the 1992 will for probate, *which placed him in the position of opposing admission of the 1995 will.* We conclude this evidence supports a finding of breach of duty by attorney Arney.

## C. Damages

■ ¶ 17 "A jury verdict will be upheld against allegation that it is unsupported by evidence if there is any evidence which, if believed by the jury, is sufficient to support the verdict." *Rucker v. Mid Century Ins. Co.,* 1997 OK CIV APP 47, ¶ 18, 945 P.2d 507, 511. In this case, Arney does not specifically argue that the evidence does not support the amount of the verdict as modified by the Trial Court, and we find sufficient evidence supporting the judgment amount. The evidence supports conclusions that (1) Ayres was competent at the time of execution of the will and desired to leave 75% of her residual estate to her friends, the Kimbles; and (2) the amount of the estate would have been such that the Kimbles would have received several hundred thousand dollars if the will had been executed properly and admitted to probate. Based on these conclusions, we find

the amount of the jury verdict, as modified by the Trial Court, to be supported by competent evidence.

## D. Evidentiary Rulings

¶ 18 Arney next claims the Trial Court erred in two evidentiary-related matters. Arney maintains that the Trial Court erred in denying admission of the transcript of the probate hearing on the 1995 will, and in admitting what he depicts as hearsay testimony from the Kimbles about purported statements made by Ayres.

¶ 19 "[E]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected." 12 O.S.2001 § 2104(A). The settled rule is that only those errors in admission or rejection of evidence which result in miscarriage of justice or constitute substantial violation of some constitutional or statutory right require reversal of a cause by this Court on appeal. *Bond v. Bond,* 1996 OK CIV APP 3, ¶ 19, 916 P.2d 272, 277.

¶ 20 Arney sought to admit into evidence the transcript of the hearing on the issue of admission of the 1995 will to probate. The transcript of that hearing would have been hearsay testimony if admitted in the jury trial in this case. *See Civil Serv. Comm'n of City of Tulsa v. Gresham,* 1982 OK 125, ¶¶ 28–30, 653 P.2d 920, 925–26. Thus, it was not admissible absent some showing of an exception to the hearsay rule. Perhaps, more importantly, the admission of the evidence would have interjected into this trial additional testimony of the witnesses, Arney and Muno, from another proceeding which could have been highly confusing to the jury. In that regard, the Trial Court had the duty to determine if such evidence, even if determined to be admissible, should be excluded because of confusion of the issues. 12 O.S.2001 § 2403.

¶ 21 Upon our review, we cannot conclude that the Trial Court's refusal to admit the evidence was error. The primary reason Arney wanted to admit the transcripts was to show that the Kimbles failed to ask certain questions regarding the legal sufficiency of the execution of the 1995 will. However,

counsel addressed that issue in great detail in Arney's testimony *in this case,* with the result that the jury was completely apprized of this contention. Accordingly, we do not find any reversible error in the Trial Court's refusal to admit the transcript of the other hearing.

¶ 22 Arney also claims the Trial Court erred in allowing Mrs. Kimble to give hearsay testimony regarding purported statements of Ayres. Arney did not object to two statements by the witness—that Ayres requested the Kimbles to a make an appointment with Arney, and asked Mr. Kimble to consider acting as her attorney-in-fact; therefore, any claim of error has been waived. *Rucker,* 1997 OK CIV APP 47 at ¶ 15, 945 P.2d at 511. Another claimed interjection of hearsay was when Mrs. Kimble started to describe how Ayres had stated her dissatisfaction with Lohrengel's handling of her business affairs. However, defense counsel's objection interrupted her statement, *and the Trial Court sustained the objection.* Thus, there was no error in that instance.

¶ 23 Finally, the last statement complained to be hearsay was this:

A. [Mary Kimble] Well, whenever [attorney Arney] come to the door and told [Ayres] that he was ready for her, well, Woodie and I said we could just sit there, and she [Ayres] said, "No, I want you to come on in."

Defense counsel objected to the statement without specifying the nature of the objection. Counsel for the Kimbles asserted the statement was admissible as a statement of the declarant's state of mind, and it was ruled admissible by the Trial Court. We agree that the statement was admissible under 12 O.S.2001 § 2803(3).

¶ 24 The test of whether admission of irrelevant or otherwise inadmissible evidence created prejudice, and is grounds to reverse a jury verdict, is the likelihood the verdict would have been different had error not occurred, measured by the usual criterion of the verdict's support in evidence. 12 O.S. 2001 § 78; *James v. Midkiff,* 1994 OK CIV APP 165, ¶ 6, 888 P.2d 5, 6. From our review

of the transcripts of the trial, we simply do not find that any of these evidentiary matters would have changed the outcome of the trial.

### E. Instructions

¶ 25 Arney's final contention of error is that the Trial Court improperly instructed the jury by not crafting negligence instructions more specifically suited to this legal negligence case. Arney offered a four-page proposed instruction. However, the Trial Court gave general negligence instructions, Oklahoma Uniform Jury Instructions–Civil (Revised) (OUJI) Nos. 9.1, 9.2, and 9.6, and in addition gave OUJI No. 14.19 on duty of an attorney. It is the rule that unless an instruction, or the instructions taken as a whole, mislead a jury, there is no reversible error in faulty instructions as long as the verdict rests on competent evidence. *In re S.D.*, 2003 OK CIV APP 22, ¶ 13, 66 P.3d 462, 467. In this case we cannot say that the Trial Court erroneously refused the voluminous instruction proffered by Arney. The instructions actually given adequately stated the appropriate law and were more concise and understandable by the jury. Taken as a whole, we do not find they were misleading. Accordingly, we reject this contention of error.

### II. Counter–Appeal of the Kimbles

### A. The Remittitur

¶ 26 The Kimbles first claim that the Trial Court erred in ordering the remittitur. However, they do not deny that they accepted remittitur rather than the alternative grant of a new trial. The common law rule is that a plaintiff who accepts remittitur in lieu of a new trial will not thereafter be heard in an appellate court to complain of his/her choice. *Toews v. Funk*, 129 Idaho 316, 924 P.2d 217 (Idaho Ct.App.1994). Based on that rule, Arney urges this Court to find that the Kimbles are barred from challenging the amount of the judgment on

their counter-appeal. However, as the Kimbles point out in their response, many states are abandoning the hard and fast common law rule and moving toward a more equitable maxim. Some states have, by decisional law, recognized a right to a direct appeal of a remittitur order which has been accepted. *Plesko v. City of Milwaukee*, 19 Wis.2d 210, 120 N.W.2d 130 (1963).[1] Other states have by judicial pronouncement recognized the right of a plaintiff to attack by counter-appeal an order of remittitur which has been accepted, if the defendant challenges the amount of the judgment on appeal. *Mulkerin v. Somerset Tire Serv., Inc.*, 110 N.J.Super. 173, 264 A.2d 748 (1970). A number of states, which we shall not delineate, have modified the common law rule by statute or court rule.[2]

¶ 27 There does not appear to be any published Oklahoma decision addressing this specific issue, but this Court concludes that the equities do tend to favor the rule that a plaintiff should have a right to counter-appeal regarding an accepted remitted judgment *when the defendant challenges the amount of the judgment on appeal.* The Supreme Court of Colorado stated the rationale supporting such a right:

In our view, cross-appeals of remittiturs should be permitted when the party for whom the remittitur was granted appeals on other grounds. The reasons supporting the traditional rule are not present when the plaintiff is forced into the position of responding to an appeal by the defendant. Judicial economy is best achieved by reviewing the remittitur judgment at the same time other issues in the case are resolved. A new trial may be completely avoided if the trial court's order is found erroneous and the original verdict is reinstated. Moreover, such a rule encourages the defendant to pursue only meritorious appeals because of the chance that the appellate court may reinstate the original

---

1. The Court in *Plesko* rationalized that it would be unfair to allow a defendant who receives the benefit of remittitur to also have the sole opportunity to appeal all issues without the risk that the original verdict might be reinstated. *Id.* at 135.

2. An analysis of the development of changes in the common law rule is found in Cmt. Note, Annotation, *Party's Acceptance of Remittitur in Lower Court as Affecting His Right to Complain in Appellate Court as to Amount of Damages for Personal Injury*, 16 A.L.R.3d 1327 (1967).

verdict while ruling against the appellant on all other issues.

*Burns v. McGraw–Hill Broadcasting Co.,* 659 P.2d 1351, 1355 (Colo.1983).

¶ 28 We agree with the Colorado court's rationale, and reason that, if called upon to address the issue, the Oklahoma Supreme Court would recognize a right of counter-appeal by a plaintiff who has accepted a remitted judgment. Therefore, we conclude that the Kimbles are not barred from challenging the order of remittitur.

 ¶ 29 "Clearly, a remittitur may be granted for an error in the admission of testimony or for the giving of an erroneous instruction, but only so long as such errors affect the question of damages and not solely that of liability." *Strubhart v. Perry Mem. Hosp. Trust Auth.,* 1995 OK 10, ¶ 18, 903 P.2d 263, 270. A remittitur may be reversed for an abuse of discretion or because the trial court acted arbitrarily or capriciously. *Id.*

¶ 30 From the evidence, we do not find that the Trial Court abused its discretion. The testimony which served as the foundation of the Kimbles' request for judgment in excess of $435,000, regarding the worth of the Ayres estate, included the amount of the $195,000 "loan" from Ayres to the Kimbles.[3] However, evidence did tend to establish that this loan was or would be discharged in the Kimbles' bankruptcy. Therefore, the evidence did not support the verdict, but did support the judgment after remittitur.

**B. Prejudgment Interest**

 ¶ 31 The Kimbles claim the Trial Court erred by not awarding them prejudgment interest under 12 O.S.2001 § 727(E), or 23 O.S.2001 § 6. Section 727(E) provides:

### PREJUDGMENT INTEREST

E. Except as provided by subsection F of this section, if a verdict for damages by reason of personal injuries or injury to personal rights including, but not limited to, injury resulting from bodily restraint, personal insult, defamation, invasion of pri-

vacy, injury to personal relations, or detriment due to an act or omission of another is accepted by the trial court, the court in rendering judgment shall add interest on the verdict at a rate prescribed pursuant to subsection I of this section from the date the suit resulting in the judgment was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk.

Title 23 O.S.2001 § 6 provides:

Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.

 ¶ 32 We do not believe that section 6 applies to this case because it generally applies in instances of liquidated damages. Damages subject to a fact-finder's determination of reasonableness are not liquidated and not subject to prejudgment interest under section 6. *Pierce Couch Hendrickson Baysinger & Green v. Freede,* 1997 OK 33, ¶ 36, 936 P.2d 906, 914.

¶ 33 We believe the issue of entitlement to prejudgment interest under section 727(E) is settled by pronouncement of the Oklahoma Supreme Court in the professional malpractice case *Stroud v. Arthur Andersen & Co.,* 2001 OK 76, 37 P.3d 783. The Court stated:

Plaintiffs claim that Andersen's negligent conduct injured their "personal rights" thereby entitling them to receive prejudgment interest under the terms of 12 O.S. Supp.1997 § 727(E). The trial court denied their motion for the same. The Court does not find § 727(E)'s ambit to be as sweeping as the plaintiffs suggest. Were we to extend the reach of § 727's provisions as requested, our decision would have the practical effect of extending the

---

3. Evidence indicated that the parties settled Lohrengel's suit (as Ayres' guardian) against the Kimbles to recoup the $195,000 Ayres had given

them to settle their cattle debt. To settle the matter, the Kimbles gave a note to Lohrengel/Ayres' estate for that amount.

prejudgment-interest allowance to 'almost every prevailing party in a tort action. Such a result would eviscerate the legislatively-imposed limitations embodied in § 727's provisions.

At common law judgments do not bear interest. Hence, recovery of interest on a judgment must be authorized by statute. The injuries of which both SCI and Stroud complain are injuries to business assets, i.e., property. When in 1984 the Court first considered whether a negligence claim involving an injury to property was a "personal injury" under the provisions of § 727 then in effect, it held it was not and that prejudgment interest was unavailable. The statutory amendments to § 727 enacted since then do not persuade the Court that the Legislature intended to extend the Court's earlier definition of "personal" to include injury to property. An economic loss emanating from a business venture does not qualify as a *personal* injury under § 727(E)'s provisions and, hence, does not meet the statutory requirement for an award of prejudgment interest. The trial court's denial of prejudgment interest is sustained.

*Id.* at ¶¶ 35–36, 37 P.3d at 794–95 (footnotes omitted). Based on these two pronouncements by the Oklahoma Supreme Court we conclude that the Trial Court did not err by refusing to award prejudgment interest.

### C. Alternative Claims of Error

¶ 34 We do not address the Kimble's claims of lower court error in striking certain of their theories of recovery. Those contentions of error were stated to apply only if this Court were to vacate the judgment on jury verdict. We have not done so.

## CONCLUSION

¶ 35 We find none of Arney's contentions of error availing of reversal and further find the judgment on jury verdict supported by competent evidence. Likewise, we find no support for the contention of error asserted in the Kimbles' counter-appeal. Therefore, the judgment of the Trial Court is affirmed in all regards.

¶ 36 AFFIRMED.

TAYLOR, P.J., and GOODMAN, J., concur.